## ALEXANDER et ux. v. SCHLEICHER COUNTY. (No. 1070–4807.)*

Commission of Appeals of Texas, Section A. Feb. 29, 1928.

1. **Boundaries** ⬯46(1)—**Where adjoining landowners agreed upon line as boundary and built fence, facts held to show "agreed boundary."**

Where lessee determined boundary of land and adjoining landowner agreed thereto, fence was erected on such line, and thereafter other landowner agreed thereto, facts *held* to show that there was "agreed boundary."

2. **Boundaries** ⬯46(4)—**Where adjoining landowners established agreed boundary and one granted roadway along boundary to county, subsequent agreement between landowners respecting boundary held ineffective against county.**

Where adjoining landowners established agreed boundary and one of them granted roadway along such boundary to county, subsequent agreement between one landowner and the other as to true location of boundary which would place part of roadway on other's land *held* ineffective as against county.

3. **Highways** ⬯71—**County held not bound by alleged oral agreement of county judge and county commissioner separately with landowner that roadway was erroneously located and would be moved.**

County *held* not bound by alleged oral agreement made by county judge and one of county commissioners separately with landowner that public road was erroneously located on latter's land and would be moved.

4. **Appeal and error** ⬯854(2)—**Judgment refusing injunction held not reversible, even if reason given was bad, where judgment was correct on another ground.**

Judgment refusing to enjoin maintenance of public road on ground that there was prescriptive right thereto *held* not reversible, even if reason given was bad, where judgment was nevertheless correct on ground that there was roadway by grant.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by J. R. Alexander and wife against Schleicher County. Judgment for defendant was affirmed by the Court of Civil Appeals (291 S. W. 263), and plaintiffs bring error. Affirmed.

Collins, Jackson & Sedberry, of San Angelo, for plaintiffs in error.

Thomas & Lewis, of San Angelo, and W. F. Ford, of El Dorado, for defendant in error.

### Statement of the Case.

NICKELS, J. Section 18, block 1, Galveston, Harrisburg & San Antonio Railway Company survey, Schleicher county (supposed to contain 640 acres), extends 1,903½ varas east-west and 1,900 varas north-south.

The "south ½" (320 acres) was by the state awarded to Watters May 11, 1906. Subsequent conveyances are: Watters to Lockhart, September 10, 1906; Lockhart to W. A. Alexander, June 28, 1907; W. A. Alexander et ux. to Cozby, September 10, 1909; Cozby et ux. to J. R. Alexander et ux., plaintiffs in error, November 1, 1914.

The date when the "north ½" (320 acres) was sold by the state is not shown, but B. W. Montgomery acquired it either from the state or from the state's original or remote vendee in 1906. Montgomery has owned the land since that time.

Adams was Watter's lessee in 1906. The common boundary of the north ½, owned by Montgomery, and the south ½, owned by Watters, had not been located on the ground, and the owners "did not know where it should be located." Montgomery and Adams undertook to ascertain its proper location through measurements, etc., of the north-south lines. Montgomery (whose testimony is not challenged) said:

"In measuring the east and west lines we were endeavoring to locate the middle point. * * * We all agreed that it would be too expensive to have a surveyor locate the division point, and we agreed to measure it the best we could and get our corners in the center and divide the section and take these corners as our corners and lines. I met Waters, the lessor of the south half, some time after that, and told him how we had measured and put up the fence, and told him we measured it out as near as we could, that I could not tell whether it was on me or on him, but that we put it as near the center

*Rehearing denied April 11, 1928.

as we could, and he said that was satisfactory with him. I told him what had passed between Mr. Adams and myself, and that we agreed to let the corners be the true corners and that line the true line. I told him just how we divided the land and what we all agreed. It was after that that he made the reply that it was all right."

A fence was erected on the line thus run; this was done before the conclusion of the matter was reported to Watters. It was erected by Adams; at least his lessor, Watters, became the owner of the fence, for it passed to subsequent purchasers of the south ½. The fences along the eastern and western boundaries of the north ½ were then, or shortly thereafter, connected with the one built on the line run by Montgomery and Adams. Inclosure of the north ½, thus laid out, was completed by a fence along its northern boundary. All that fencing remained and existed on June 1, 1911.

On that day (June 1, 1911) Montgomery conveyed to Schleicher county "a 20-foot strip off the west side" of the north ½ and a "40-foot strip off the entire south side" of the north ½, "for the purpose of establishing and maintaining a public road" thereon. The deed was accepted by the county with payment of $80 money consideration.

Shortly thereafter the road was laid out by agents of the county across the north ½, as fenced, and immediately beside the fence mentioned as having been erected on the line run by Montgomery and Adams in 1906. Montgomery, in making the conveyance, and the agents of the county, in laying out the road, thought the deed covered the strip thus actually appropriated.

In "opening" the road, gates were put in Montgomery's eastern and western fences, a ditch was run alongside the roadway for part of its course, and parts of the area were "grubbed," etc.—such as was appropriate to put the area in condition for use as a road.

Cozby owned the south ½, including the fence theretofore erected on the line run by Montgomery and Adams in 1906, and was then in possession. He "helped" in the work done upon the roadway, etc., and made a contract with the agent of the county "to dig those trees" in the area "for the wood" in them.

The roadway thus prepared and laid out was opened to public travel in 1911 and has been used by the traveling public at all times since. Schleicher county has continuously claimed and exercised jurisdiction over it, and from time to time has "worked" it through its superintendent, overseers, and roadhands.

The fence erected on the line run by Montgomery and Adams in 1906 was correctly located at its western terminus, but at its eastern terminus it was put 32.3 varas south of the true midway point of the eastern boundary of the section; in consequence the road-

way for a part of its course across the section lies partly, and for the balance of its course lies wholly, within the south ½.

J. R. Alexander and wife acquired the south ½ from Cozby November 1, 1914, and have owned it at all times since. In the spring of 1920, they discovered that the roadway was partly in the south ½. In November, 1924, Hines, county surveyor, at the instance of Alexander and wife, ran and located the true boundary between the north and south halves of the section. Shortly after completion of this survey, Alexander, according to his testimony, "requested the county to move the road off his land, and they agreed to do it." According to his testimony, he "arbitrated." He settled the location of the line in February, 1925, by arbitration with Montgomery; the agreement being that the line as run by the county surveyor should be considered the true line. The claimed agreement with the county is thus described in the testimony of Mr. Alexander: (a) It was with the county judge and one of the commissioners in March, 1925. (b) It rested in conversations separately with the judge and the commissioner. (c) There was no communication with or action taken by the commissioners' court as a body.

The claimed agreement with the county has not been performed, but, on the contrary, the county, through its agents, is "threatening to work the road."

November 17, 1925, Alexander and wife brought suit against Schleicher county. In the petition their ownership of the south ½, with the boundaries laid out by the county surveyor in 1924, is alleged and shown in connection with averments that: (a) Montgomery conveyed the "40-foot strip off the entire south side" of the north ½ as shown above; (b) acting upon such authorization, the commissioners' court of Schleicher county located the public road sold to it theretofore as aforesaid; (c) "but, * * * acting by and through its duly authorized agents and representatives," the county "has sought to establish and maintain a public road on lands belonging to the plaintiffs and running along the north line" of the south ½ in the manner above described, "without the consent or acquiescence of these plaintiffs and without legal authority or permission so to do"; (d) the county "has failed and refused, still fails and refuses, to locate and establish and maintain a public road along the lands" thus conveyed to it "for said purposes by B. W. Montgomery," and is "trespassing upon plaintiffs' lands, as aforesaid," and to their great injury. The prayer is for judgment "perpetually enjoining Schleicher county and its agents and representatives from attempting to maintain a public road, as aforesaid," on lands of the plaintiffs and for general relief.

The county answered with exceptions (which were not acted upon) and with a general denial. Upon trial, judgment was ren-

dered in favor of the county upon the theory, stated in a "conclusion of law" filed by the trial judge, that "the holding of the county was adverse to the plaintiffs, and * * * it thereby acquired title by adverse possession to the road in so far as it ran across plaintiffs' lands." Upon appeal, the judgment was affirmed. 291 S. W. 263.

Writ of error was allowed (principally) upon assignment reading as follows:

"The Court of Civil Appeals erred in not sustaining and overruling the appellants' first proposition and assignment of error, which reads as follows:

" 'Under the Constitution and laws, the only way Schleicher county could acquire the right to maintain a public road over the plaintiffs' lands was either by (a) grant from the owners; (b) condemnation proceedings; or (c) adverse use for such a length of time as would raise the presumption either that a grant had been procured from the owners, or that the road had been laid out and established by competent authority and under the control and direction of the commissioner's court, and the court therefore erred in rendering judgment for the defendant and in refusing to restrain the county from seeking to maintain the road in question over the plaintiffs' lands, because the county had not acquired a public road thereover in any of the ways mentioned, and it appeared from the undisputed proof that the plaintiffs were entitled to the relief sought.' "

The other assignments relate to asserted error in the holdings that the county had acquired title by adverse possession.

### Opinion.

[1] 1. The prima facie effect of the joint action of Montgomery and Adams, ratified by Watters, in 1906, is that of an "agreed boundary." Harn v. Smith, 79 Tex. 310, 15 S. W. 240, 23 Am. St. Rep. 340, and cases there cited; Lecomte v. Toudouze, 82 Tex. 208, 17 S. W. 1047, 27 Am. St. Rep. 870, and cases there cited. The "agreed boundary" was accepted and acted upon by then owners of the contiguous tracts, and by the owner of one of the tracts at all subsequent times up to February, 1925. For aught that is shown, subsequent owners of the other tract acted in recognition and without effort to repudiate the "agreed boundary" up to November, 1924.

[2, 3] In purported authority of Montgomery's conveyance, the then owners of the contiguous tracts in 1911 recognized the fence theretofore erected on the line run by Montgomery and Adams as being on the common boundary; at all times since, the county, under its grant from Montgomery, has claimed with reference to the boundary thus evidenced.

The rights of the county having intervened, any subsequent agreement between Montgomery and the Alexanders (e. g., the 1925 arbitration) was ineffective, and manifestly the agreement between the Alexanders, on the one hand, and the county judge and one of the commissioners, on the other, if made as claimed, would not impose obligation upon the county.

It results that Schleicher county acquired and has a right to maintain the road in controversy by "grant from the owners" within the concessions of the first assignment.

[4] In consequence, the other assignments are immaterial for statement of a bad reason does not invalidate an otherwise good judgment. If it were true that the claim of a highway through prescription be not well grounded, the trial court's judgment nevertheless was correct, for there is a roadway by grant.

Accordingly, we recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed.