## MEYER v. GALVESTON, H. & S. A. RY. CO. et al.

### No. 8467.

Court of Civil Appeals of Texas. San Antonio.
June 25, 1930.

Rehearing Denied July 30, 1930.

C. C. Carsner, of Victoria, for appellant.

Proctor, Vandenberge, Crain & Vandenberge and T. R. Wood, all of Victoria, for appellees.

SMITH, J.

Appellant, J. W. Meyer, brought this action against the Galveston, Harrisburg & San Antonio Railway Company, Texas & New Orleans Railway Company, and the county commissioners of Victoria County, to recover damages of the railway companies and for mandatory injunction requiring the defendants to reopen a certain public road across the railway companies' right of way, which the companies had fenced at such intersection under an order granted therefor by the commissioners' court, without the notice required in article 6705, R. S. 1925. The proof upon the trial below related only to the matter of injunction, which the court denied. Meyer has appealed.

Appellant owns two tracts of land of forty and seventy-eight acres, respectively, situated about one-half mile east of the corporate limits of the city of Victoria. The two tracts corner each other, at the northwest corner of the smaller and southeast corner of the larger tract. The roadway here in controversy runs along the northwest boundary of the smaller and continues along the southeast boundary of the larger tract. The railway companies' right of way and tracks, running east and west, traverse the forty acre tract near its northwest corner. The roadway here in issue crosses the railway right of way near the northwest corner of appellant's forty acre tract. A federal-state concrete highway, now under construction, traverses the seventy-eight acre tract near its southeast corner, and parallels the railway, the two lines being about 600 feet apart in the vicinity of appellant's lands.

In readjusting the system of roads in the vicinity in question to the new concrete highway, the commissioners' court of Victoria county desired certain strips of the railway companies' lands and right of way, which the latter conveyed to the county in consideration of an agreement of the commissioners' court to authorize and order the closing of the roadway in question over the railway companies' right of way. These agreements were consummated by written contracts between the commissioners' court and the railway companies, and said crossing was fenced by the latter in 1929. The road in question was left otherwise open and undisturbed. It is apparently a cross-country neighborhood road, paralleled and crossed in the immediate vicinity by numerous other roads of that class.

Otherwise the evidence is too meager to warrant any findings as to the character or extent of the road. There is no evidence of its length, or of the nature or degree of improvements upon it or the extent or purposes of the use of it by the public.

It is agreed by the parties that the order to close said road was made, and said road was closed, without notice of or petition for such closing; that said road "extended in a northerly and southerly direction across the railway right of way and tracks; that the alteration made in said road by the Commissioners' Court's orders and the agreements above mentioned and by the closing up of the railway crossing was to discontinue that portion of the road across the railway right of way and tracks; that same was made by the unanimous consent of all of the Commissioners of the Commissioners' Court of Victoria County elected; that no portions of the road were closed, save the portion included in the crossing over the railroad right of way, and all other portions of said road extending from the railway right of way both North and South are open and accessible for use by the plaintiff and the public; that no new road was built connecting the parts of the road not discontinued; that the entire road as above shown was not discontinued."

The town of Victoria was originally established upon a four-league grant of land from the sovereign. Sometime prior to the year 1879 the town subdivided the grant and designated and marked the streets thereof. By this process the roadway involved in this suit was first designated and marked as a street of the town of Victoria, but it is not shown that the town ever actually laid out or opened or otherwise established the street for use as such.

Prior to March 19, 1879, the corporate limits of the town were reduced and restricted to certain territory one mile square, by which process the roadway here involved was excluded from said corporate limits. The charter of the town was amended by an Act of the Sixteenth Legislature, approved March 19, 1879 (9 Gammel's Laws, p. 6), in which it was provided "that all streets, alleys, roads or highways, as heretofore laid out or established within the territory relieved from the jurisdiction of the said corporation under this act, are declared to be so set apart for public use, and shall remain forever as so established. * * *"

It is agreed by the parties to this suit "that after the limits of the Town of Victoria were reduced so as to leave said road outside of the corporate limits of Victoria, said road has been recognized by the County of Victoria as a public road and same has been worked and maintained under the super-

938

vision of the County Commissioners' Court of Victoria County, and during said period has not been recognized or worked or maintained by the City of Victoria."

It is provided in article 6703: "The commissioners court shall order the laying out and opening of public roads when necessary, and discontinue or alter any road whenever it shall be deemed expedient. No public roads shall be altered or changed except to shorten the distance from end to end, unless the court upon a full investigation of the proposed change finds that the public interest will be better served by making the change; and said change shall be by unanimous consent of all the commissioners elected. No part of a public road shall be discontinued until a new road is first built connecting the parts not discontinued. * * *"

And it is provided in article 6705: "The commissioners court shall in no instance grant an order on an application for any new road, or to discontinue an original one, or to alter or change the course of a public road, unless the applicants have given at least twenty days notice by written advertisement of their intended application, posted up at the court house door of the county and at two other public places in the vicinity of the route of such road. All such applications shall be by petition to the commissioners court, signed by at least eight freeholders in the precinct in which such road is desired to be made or discontinued, specifying in such petition the beginning and termination of such road, provided an application to alter or change a road need not be signed by more than one freeholder of the precinct."

It is provided in article 6706 et seq. that "all roads ordered to be made shall be laid out by a jury of freeholders" by processes therein prescribed in detail. It is conceded that the road here in question was not established by these processes, and it is contended by appellees that because the road was not so established the commissioners' court had the authority to discontinue or close it without resort to the process prescribed by the statute (article 6705).

There was no proof that this roadway was ever "laid out or established," or opened to travel prior to its exclusion from the corporate limits of the town, and we are therefore of the opinion that the provision in the Act of March 19, 1879, that all streets, roads or highways "as heretofore laid out or established" within the excluded territory "are declared to be so set apart for public use, and shall remain forever as so established," did not apply to said roadway. It is inferable from the record that when the original town was subdivided into streets, etc., such streets were designated throughout the whole four-league grant, and when the town limits were

circumscribed to a territory one mile square the excluded territory necessarily embraced many designated but useless and unopened streets. It cannot be presumed that the Legislature intended that such unopened streets should then be set apart and irrevocably appropriated to public use. The obvious intention of the Legislature was to release from urban control the large territory thus excluded from the original town limits, and restore it to its natural uses as rural lands: to relieve it of the burdens and restraint of town government and place it under the jurisdiction of county government, to take its place upon equal terms with all other rural territory in the county. A reasonable interpretation of the Legislative Act is that it was thereby intended that roads and streets already "laid out or established," and therefore actually appropriated to the public use, should not lose their character as public ways by reason of their exclusion from the old town limits. It would be absurd to enlarge the language of the act to mean that the excluded territory should forever be burdened with all the roads, streets, and alleys previously designated on the town map.

[2] By the Act of March 19, 1879, jurisdiction over road matters in the excluded territory passed automatically to the county commissioners' court, subject to the provision that the streets and roads already "laid out or established" under town control should retain their existing public character. Otherwise the commissioners' court had the power to establish, change, or discontinue public roads under the specific processes prescribed in then existing and future statutes. The road here in question is not shown to have been within the excepted class, but, so far as the record shows to the contrary, was afterwards opened, but not laid out or established by the process provided in article 6705 et seq. As it was not established by that process, it may be discontinued by the commissioners' court without resort to that process, as was done in this case. Morriss v. Cassady, 78 Tex. 515, 15 S. W. 102; Uvalde County v. Oppenheimer, 53 Tex. Civ. App. 137, 115 S. W. 904, 907; Ft. Worth & D. S. P. R. Co. v. Judd (Tex. Civ. App.) 4 S. W. (2) 1032, 1037; Lundberg v. Raymondville (Tex. Civ. App.) 4 S.W.(2d) 127.

In his brief appellant seeks reversal upon the grounds that the action of appellees in closing the crossing contravened specific provisions of both the state and federal Constitutions in that it amounted to a taking, damaging, or destruction of private property for a public use, was a grant of special privileges and immunities to the railway company, and deprived appellant of his property, without due process of the law. As none of these questions were raised by pleading or

evidence in the court below, however, they cannot be considered here.

█ Complaint is made by appellant that the trial court excluded certain deeds offered by appellant to show that the lands in controversy had been conveyed from time to time with reference to a certain map on which the roadway in question was designated as a street of the town, showing an irrevocable dedication of said street to the public use. Said conveyances were also offered for the purpose of showing that appellant's fee-simple title to said property was deraigned from the sovereign, was conveyed to appellant prior to the extension of the road in question over appellee railway companies' tracks and right of way, whereby the rights acquired by the railway companies were "subject to all prior vested rights in said street." We conclude that there was no material error in the exclusion of this evidence. It was not material to the question of appellant's title, which was otherwise proven to the extent of his allegations in that respect. There were no pleadings by appellant of facts showing an irrevocable dedication of the street by the town, nor of the transfer of said lands with reference to the location of said street or road upon the map of the town, and, in the absence of such pleading proof of those facts, at least for the purpose of securing extraordinary writs, was subject to the objection urged thereto by appellees and sustained by the court. We overrule appellant's propositions 2, 3, 4, 5, 6, 7. Appellant's propositions 8, 9, and 10 and correlated assignments of error are too general to require consideration, and are therefore overruled.

It is not intended by this decision to hold that under no set of circumstances can appellant complain of the closing of the crossing in controversy. We expressly confine the decision to the case actually presented, which is, in short, that because appellant did not show by co-ordinated pleadings and evidence that the road in question had been actually laid out and established as a public street or road prior to the Act of March 19, 1879, so as to bring it within the provision in that act that such streets as had then been "laid out and established" by the town should take and forever retain the status of public roads, and did not in the alternative show that said road had been established by any existing or subsequent process prescribed by statute, it may be changed or the crossing in question closed by the commissioners' court without resort to corresponding process prescribed by statute, such as article 6703, et seq.

We simply hold that, upon the case made by co-ordinated pleadings and evidence, the judgment must be affirmed.