**MEYER v. GALVESTON, H. & S. A. RY. CO. et al.**

**No. 1334—5865.**

Commission of Appeals of Texas, Section B.

May 16, 1932.

Luther Nickels, of Dallas, and C. C. Carsner, of Victoria, for plaintiff in error.

Proctor, Vandenberge, Crain & Vandenberge and T. R. Wood, all of Victoria, and Baker, Botts, Parker & Garwood, of Houston, for defendants in error.

SHORT, P. J.

The plaintiff in error brought this action against the Galveston, Harrisburg & San Antonio Railway Company, Texas & New Orleans Railway Company, and the county commissioners of Victoria county for a mandatory injunction requiring the defendants in error to remove a certain obstruction in the nature of two wire fences, which had been erected by the railroad companies, under the authority of an order of the commissioners' court of Victoria county, from a certain roadway leading into the town of Victoria, at a point about one-half mile from the outer limits of said town. The plaintiff in error also sued to recover damages of the railroad companies in the sum of $2,000. The case was tried to the court without the aid of a jury, and a judgment was rendered denying the plaintiff in error any relief. Upon appeal to the Court of Civil Appeals at San Antonio the judgment of the trial court was affirmed. 30 S.W.(2d) 936.

The portion of the plaintiff in error's petition, which is relevant to the questions of law presented by the application, may be summarized as follows:

The plaintiff in error alleged that he was the owner of two farm lots, one of 40 acres and the other 78 acres, adjacent to the town of Victoria and abutting upon a public street

or road duly laid out, marked, designated, and recognized upon the established map and plat of the Four League grant to the town of Victoria, which road had been duly established as a county road, and had been in use as a county road for a period of more than ten years, and which had been established and declared to be a public highway and set apart for public use by a special act of the Legislature of the state of Texas, dated March 19, 1879 (9 Gammel's Laws, p. 6); the first named lot lying on both sides of the railroad right of way and being crossed by said right of way, situated to the south, and the 78-acre tract, which is to the north of the railroad right of way, but each abutting on the public road above mentioned; that prior to the 19th day of March, 1879, said passageway had been recognized and worked by the county commissioners of Victoria county, and that the defendants in error had illegally closed the passageway.

As no testimony was introduced in support of the claim for damages, we omit the allegation with reference thereto as being immaterial at this time. While the defendants in error embraced in their answers, which are substantially the same, though in separate papers, a general demurrer and a general denial, it appears that the demurrer was not urged nor did the court act upon it, leaving the sufficiency of the pleadings unassailed either by a general or special exception.

The facts established are without contradiction, and may be stated as follows:

The road involved in this suit is 50 feet wide, and was marked as a street or passageway on the original subdivision of the Four League grant of land by the Republic of Texas to the town of Victoria prior to March 19, 1879. This map and plat, subdividing the Four League grant, was made in 1858; the map shows that, outside of what is now the present limits of the town of Victoria, the land belonging to the town was divided into farm lots, and between these farm lots was left passageways, of which the passageway in controversy was one; that, after the limits to the town of Victoria were reduced, all of these passageways to these farm lots ceased to be streets of the town, these limits having been reduced from four miles square to one mile square; that, after this reduction of the town limits, this particular passageway had been recognized by the county of Victoria as a public road, and had been worked and maintained under the supervision of the commissioners' court. The Legislative Act of March 19, 1879, among other things, provided that all ways which had previous to that time been laid out or established within the territory outside of the town of Victoria, with its limits reduced, are declared to be set apart for public use and to remain forever as so established, and further provided that all un-

sold lands, belonging to the original corporation, should remain the property thereof; that about the year 1884 the railroad companies, the defendants in error, built a road across this particular passageway, but left the same open; that this opening continued from that time until the 27th day of September, 1929, when the railroad companies closed up the crossing of said passageway across said right of way by virtue of the orders of the commissioners' court of Victoria county; that said orders were made without notice to any one; that the passageway thus obstructed extended in a northerly and southerly direction across the railroad right of way, and the effect of the obstruction was to discontinue only that portion of the passageway which, previous to that time, had crossed the right of way, but did not obstruct any other part of said passageway; that the orders of the commissioners' court were made by the unanimous consent of all the members thereof; that on Feb. 5, 1840 (2 Gammel's Laws, p. 276), the Congress of the Republic of Texas passed an act incorporating the town of Victoria, providing, among other things, that its limits should include and comprehend the Four League grant on which the town was situated; that on December 10, 1841 (2 Gammel's Laws, p. 687), the Congress of the Republic of Texas passed an act confirming the title to these four leagues of land originally granted to the town of Victoria in the incorporation of said town, ratifying all sales previously made of said lands by said town, and requiring the commissioner of the General Land Office to recognize the title of said town in said land as valid; that the city council of the town of Victoria, on April 20, 1839, passed an order, among other things, recognizing as valid the old survey of the town as surveyed by James Kerr; that on January 18, 1840, said town council directed the town surveyor to proceed to lay out all town lots not heretofore surveyed on the east side of the Guadalupe river, except the timber land, and directed him to make a map of the same for the use of the corporation; that this was done, and afterwards this map was verified by another survey; that the distance from the southeast corner of the 78-acre tract to the north line of the railway right of way was 200 feet; that said 78-acre tract is located north of the railway right of way, and fronts east on that portion of the passageway lying on the north of said right of way; that the 40-acre tract fronts on the west of said portion of said road lying to the south of said right of way; that the new highway being constructed, which crosses said railroad right of way, is 600 feet from the point where this passageway crosses the railroad right of way at the point where it is now obstructed.

The map introduced in evidence is shown to have been a map of the Four League grant as

subdivided, and the two tracts of land mentioned are shown to be parts of this Four League grant and subdivisions thereof, according to said map. This map shows these passageways between these subdivisions, and especially the passageway obstructed by the building of the two wire fences inclosing the right of way of the defendants in error, the railroad companies, at the point where the railroad bed crosses said passageway. While the map does not show the width of these passageways between these farm lots, the testimony does show that this particular passageway was 50 feet wide. The plaintiff in error testified without contradiction that, before said obstruction was placed across said passageway, he could go from one tract of his land to the other by using said passageway, and that these two tracts of land were within 400 feet of each other, but that, since the obstruction had been placed across said passageway, he now has to travel two and one-half miles to go from one of his tracts of land to the other; that, while he lives in the town of Victoria, he cultivates by tenants both of said tracts; and that it was necessary for him to visit his lands often.

The defendants in error introduced certain orders of the commissioners' court of Victoria county, the legal effect of which, if valid, was to authorize the railroad companies to place and maintain the obstruction it did place across the passageway in dispute. Among these orders is the following: "One of the considerations moving the railway company to grant to the county the easements of the property herein described is the agreement by the county to definitely vacate, abandon and close to public travel the existing grade crossing between cattle guards 84–C and D, 93–F and D and 100–B and C, and the railway company is hereby authorized to extend its property line fences so as to exclude all travel at said crossings." One of these crossings mentioned in the order, above quoted, is the crossing in dispute, and the date is previous to the date the obstruction was placed across the passageway. The defendants in error also introduced an amendment to the original order, part of which is heretofore quoted, dated November 15, 1888, as follows: "One of the considerations moving the railway company to grant to the county the easements and property herein described, is the agreement by the county to definitely vacate, abandon and close to public travel the existing grade crossing between cattle guards 84–C and D, 89–E and F, 93–F and G and 100–B and C and the railway company is hereby authorized to extend its property lines and fences so as to exclude all travel at said crossing." One of these crossings is the crossing in dispute. On November 7, 1879, the town of Victoria accepted the benefits of title 17 of the Revised Statutes of Texas (article 340 et seq.), and incorporated

in lieu of its then existing charter; that the city of Victoria, in the year 1915, adopted a charter under which it had been duly operating continuously to the time of the trial; that the acre of land included within the corporate limits of said city, under said charter of 1915 is 1,034.75 acres of land, all within the original Four League grant to the town of Victoria; that the plaintiff in error's lands and the road mentioned in the petition are lying entirely outside of said corporate limits as adopted in 1915. The defendant in error also introduced another map identifying the relative location of the two tracts of land belonging to the plaintiff in error and the railroad crossing in dispute, as well as the obstructed part of the road.

The statement of facts also shows a statement made by the counsel for the plaintiff in error, after the trial court had ruled that the orders made by the commissioners' court were valid ones, as follows: "On the trial of the case the trial court ruled that the orders and statements copied in sub-division 1 of the statement of facts were valid and constituted legal authority for the defendants to close the crossing in question, and plaintiff's attorney stated that in view of that ruling he would not and did not introduce testimony on the issues of damages alleged in his petition."

In addition to the testimony the résumé of which has been heretofore stated, the plaintiff in error offered to introduce other testimony, which was excluded upon objection in substance and to the effect that his chain of title to the two tracts of land extended from the government down to himself and consisted of written conveyances by persons having the right to execute the same, and that each of said conveyances had recited in the description of the land conveyed that the same had been made "according to the plan of said town," and each showed that the lands conveyed were a part of the Four League grant to the town of Victoria, and embraced, among other things, a patent from the Republic of Texas to the town of Victoria, dated December 20, 1840, granting to the town of Victoria four leagues of land and showed the conveyances from the town of Victoria to certain individuals, and from these individuals down to and including the plaintiff in error, all of which described lands, which are shown, belonging to the plaintiff in error, are also shown to be farm lots in certain blocks, according to the plan of said town.

Bills of exceptions were properly reserved to the action of the court in excluding this testimony, the objections to the introduction of this character of testimony being in substance that it was immaterial, and further that there was no basis in the pleadings for its introduction. The assignments of error challenge this action of the trial court, and

that of the Court of Civil Appeals, and presents the point of law which it will be necessary to discuss, but which we will do without reference to the assignments of error.

After upholding the judgment of the trial court, the Court of Civil Appeals, 30 S.W.(2d) 936, 939, makes this observance in the closing part of its opinion: "It is not intended by this decision to hold that under no set of circumstances can appellant complain of the closing of the crossing in controversy. We expressly confine the decision to the case actually presented, which is, in short, that because appellant did not show by *co-ordinated pleadings and evidence* [italics ours] that the road in question had been actually laid out and established as a public street or road prior to the Act of March 19, 1879, so as to bring it within the provision in that act that such streets as had then been 'laid out and established' by the town should take and forever retain the status of public roads, and did not in the alternative show that said road had been established by any existing or subsequent process prescribed by statute, it may be changed or the crossing in question closed by the commissioners' court without resort to corresponding process prescribed by statute, such as article 6703 et seq. We simply hold that, upon the case made by co-ordinated pleadings and evidence, the judgment must be affirmed."

■■ As we construe the opinion of the Court of Civil Appeals, 30 S.W.(2d) 936, that court held that the provisions of the charter of the town of Victoria, approved March 19, 1879, does not, under the facts, establish a right in the plaintiff in error to have this passageway kept open, and further that, since it is not shown that the road was "laid out" in accordance with certain provisions of the charter of the town of Victoria, approved March 19, 1879, does not, under the facts, establish a right in the plaintiff in error to have this passageway kept open, and further that, since it is not shown that the road was "laid out" in accordance with certain provisions of the present law, in respect to a petition and notice, these requirements have no application, and by reason of the conclusions, the order of the commissioners' court is valid. We do not agree with either one of these holdings, being of the opinion that the provisions of the charter of the town of Victoria, approved March 19, 1879, does establish a right in the plaintiff in error to have the passageway kept open, though, of course, it does not require the commissioners' court to maintain it as a public road, and being also of the opinion, while the provisions of the present law have no application, yet, under the facts of this case, the commissioners' court had no lawful authority to authorize the obstruction of this passageway.

■ We are further of the opinion that the right of the plaintiff in error to have this passageway kept open does not depend upon the existence and operation of the provisions of the charter of the town of Victoria, since these provisions would be merely an additional recognition, and a safeguard of the right of the plaintiff in error to enjoy the use of this passageway under and by virtue of his contract rights emanating from the sovereignty of the soil in the nature of a private easement over a private way, which easement was necessarily incident to, and inseparably connected with, the lands he purchased at a time and under the circumstances clearly indicating that this right of way was a part of the land he purchased.

■ The plaintiff in error alleged ownership by a fee-simple title to the lands described, which abutted upon the passageway obstructed by the defendants in error. The defendants in error filed a general denial, which, of course, had the effect to deny that the plaintiff in error owned these lands. The map introduced in evidence showed this passageway abutting upon these lands. The testimony tended to show, at least, that the owner of these lands acquired the right to use this particular passageway in going to and from them. The trial court, while admitting the maps which showed the existence of the passageways, and its relation to these lands, excluded testimony which necessarily denied to the plaintiff in error any right to the use of this passageway. Had this testimony been introduced, the court would have been compelled to have reached the conclusion that the plaintiff in error had purchased under a contract, valid in all respects, the right to the use of this passageway so long as he owned these lands. The commissioners' court has the right to withdraw, at any time it saw fit, its control and right to maintain this passageway as a public road, but this right to withdraw maintenance, and the appropriation of public funds therefor, does not carry with it the right to close up a passageway, which a private individual may have acquired by contract. The plaintiff in error, under the allegations of this petition, and the testimony which he offered, may have acquired a vested right as a private individual to the use of this passageway, and the obstruction by the defendants in error, as alleged in his petition, "was illegal and against all fair and just government and the right of this plaintiff and other land owners owning property on the south side of said railroad right of way near or adjacent to said railroad crossing."

■■ In the absence of special exceptions, especially in view of the fact that even a general demurrer was not urged to the petition of the plaintiff in error, we are of the opinion

that the petition is sufficient to state a cause of action, and we think the Court of Civil Appeals erred in holding otherwise. We are also of the opinion that the trial court erred in excluding the testimony offered by the plaintiff in error, showing a perfect chain of title from the sovereignty of the soil to himself, to the lands abutting upon this passageway, and that the Court of Civil Appeals erred in refusing to reverse the judgment of the trial court on this account. Under the allegations and proof which was offered, together with the proof which was introduced, we are of the opinion that the commissioners' court of Victoria county, while having the right to refuse to further recognize this passageway, as a public road, and to maintain it as such, did not have the right to authorize its codefendants to place the obstruction across this passageway, which the testimony shows was done, and that the plaintiff in error may be entitled to a mandatory injunction for which he prays in his petition, upon proof of the allegations in his petition, sustained as he has offered to sustain them, but which offer was refused both by the trial court, and by the Court of Civil Appeals.

■ The authority of the commissioners' court to cease to maintain a road, previously maintained as a public road, and abandon it as such, is announced in Robison v. Whaley Farm Corporation (Tex. Sup.) 37 S.W.(2d) 714. Under the facts of this case, which are without dispute in so far as they relate to the status of this passageway, the power of the commissioners' court of Victoria county, in its effort to obstruct this passageway, in the manner it has been obstructed, was limited and restricted to an abandonment by the county in its maintenance as a highway. This power, under the proof offered, did not extend to an authority to have the road obstructed in the manner it has been. The commissioners' court could eliminate the public character of this roadway, but it could not impair the rights which had been acquired by private citizens to use it as such, in traveling from one place to another, since it appears that the plaintiff in error may have purchased these lands with reference to the fact that this strip of roadway was then in existence, and had been placed there by the patentee as a means of ingress to and egress from its property.

In the case of Commissioners' Court of Harris County v. Kaiser (Tex. Civ. App.) 23 S.W.(2d) 840, 841 (writ of error refused), in an opinion written by Chief Justice Pleasants, it is said, among other things: "It is well settled that one who buys property abutting on a street or *roadway* [italics ours] acquires a property interest in the street which entitles him to its use free from obstruction. * * * In the case last cited, our Supreme Court, speaking through the great Judge Brown, says: 'The ownership of the lot abutting upon the street carried with it as property the right of free and unimpaired access thereto and egress therefrom, and whatever impaired that right and caused a depreciation of the value of the lot constituted damage to the lot within the meaning of the Constitution. * * * It was not necessary that the obstruction should be in front of or near to the plaintiff's property, but the test of the right to recover in this action is: What effect did that crossing and the condition in which it was have upon the value of the plaintiff's property and upon the exercise of his right of egress and ingress?'" Judge Pleasants, in the same opinion, pertinently remarks: "The power to discontinue a public road conferred by the cited statute is restricted to abandonment by the county of its maintenance as such public highway, and does not include the right to deny its use to the owners of property situated thereon."

■ Under the facts of this case, the town of Victoria, as a corporation, owns the fee-simple title to this strip of land. Town of Refugio v. Strauch (Tex. Com. App.) 29 S.W.(2d) 1041. The county of Victoria, when it assumed jurisdiction over this passageway as a public road, did not acquire this fee-simple title, and, when it abandoned its supervision, and ceased to maintain it as a public road, as it did, the fee-simple title continued to remain in the corporation, burdened, as it had always been, with an easement belonging to the abutting farm lot owners, who had purchased their properties abutting thereon, and had acquired, as a part of those properties, the right to use the different passageways as a means of egress and ingress. This was a vested right belonging to these property owners, of which the plaintiff in error is one, which may have been acquired from the town corporation, and which still belongs to these property owners, which may have been acquired by contract. Oswald v. Grenet, 22 Tex. 100; Lamar County v. Clements, 49 Tex. 354; City of Corsicana v. Zorn, 97 Tex. 322, 78 S. W. 924; Dallas Cotton Mills v. Industrial Company (Tex. Com. App.) 296 S. W. 503; Kalteyer v. Sullivan, 18 Tex. Civ. App. 488, 46 S. W. 288 (writ of error refused); Quanah Acme & P. Ry. Co. v. Swearingen, 4 S.W.(2d) 136 (writ of error refused); Mo. Pac. Ry. Co. v. Lee, 70 Tex. 496, 7 S. W. 857.

■ We think the ultimate facts upon which the plaintiff in error based his cause of action, in the absence of special exceptions, are sufficient to enable him to introduce the proof supporting these ultimate facts. The ultimate fact, alleged in the petition, is that the plaintiff in error, as the owner of these two farm lots, was the owner of a vested right to use this passageway in going to and from his farm lots. The Court of Civil Appeals,

in its opinion, seems to hold that the plaintiff in error should have alleged the facts upon which he relied to prove the ultimate facts so alleged. A general allegation of ownership, in the absence of exceptions requiring a particularization of the chain of title, is sufficient to admit proof that the plaintiff is the owner of the property in dispute. Thomas v. Chapman, 62 Tex. 193; Rains v. Herring, 68 Tex. 468, 5 S. W. 369; Spencer v. Levy (Tex. Civ. App.) 173 S. W. 550 (writ of error refused).

In other words, an allegation of ownership is an allegation of an ultimate fact, and sufficient to admit proof of that fact, in the absence of a special exception. Linn v. Wright, 18 Tex. 317, 70 Am. Dec. 282; Emerson v. First National Bank (Tex. Civ. App.) 25 S. W. 433.

The Court of Civil Appeals seems to have been of the opinion that the petition of the plaintiff in error was fatally defective, since it says, in effect, that under proper allegations the rejected testimony which was offered might have been admissible. Had the defendants in error presented to the trial court the special exceptions to the plaintiff's petition, which are urged for the first time in their brief filed in the Court of Civil Appeals, it may have been that the plaintiff in error would have amplified sufficiently the allegations in the petition to have met these objections, but, when the defendants in error apparently were content to go to trial of the case upon the implied admission that the pleadings were sufficient to notify them of what the plaintiff expected to prove, we do not think the present contentions of the defendants in error, challenging the sufficiency of the pleadings first presented in an appellate court, should be viewed with such seriousness as to compel us to deny to the plaintiff in error the right to prove what seems to us to have been a sufficient statement of his cause of action, in the absence of exceptions thereto presented, at a time when he would have had the right to have amended his pleadings.

We conclude that the pleadings of the plaintiff in error are sufficient to admit proof of his title, and that this title included an easement over this passageway, even though it is not maintained as a public road.

We recommend that the judgment of the Court of Civil Appeals and of the district court be reversed and the case remanded.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the question discussed in its opinion.