BOYD et al. v. DILLARD, County Judge, et al.

No. 5252.

Court of Civil Appeals of Texas. Amarillo.
May 5, 1941.

Rehearing Denied June 2, 1941.

**848**

Vickers & Campbell, of Lubbock, for appellants.

Ralph Brock, Co. Atty., Wm. Lloyd Croslin, Asst. Co. Atty., and Crenshaw, Dupree & Milam, all of Lubbock, for appellees J. J. Dillard, P. B. Penney, J. T. Pinkston, T. L. Holt, and V. J. Farris.

Gerald C. Mann, Atty. Gen., and Robert E. Kepke and James Noel, Asst. Attys. Gen., for appellee Texas State Parks Board.

JACKSON, Chief Justice. .

The County of Lubbock was organized in 1891. The commissioners' court promptly provided for opening four cardinal roads leading from Lubbock the county seat as the law provided. One of these roads by order of the court began at the court house located in the approximate center of what we shall call the town section on which the town of Lubbock is situated. This road ran north to the north line of said section, then east to the northeast corner thereof and continued east along the north line of Section 3, Block O, and the south line of Section 1 in Block A. The order of the commissioners' court was amended on February 9, 1892 and the road extended due east on section lines to the east line of the county and was designated as the Lubbock-Emma road. A jury of view was appointed and a first-class road 60 feet wide was surveyed, the center of which was on the north boundary line of said Section 3, and the south boundary line of said Section 1, and 30 feet off of each section was appropriated for use as a part of the Lubbock-Emma road. This road was maintained by the county and extensively used for travel by the public for more than forty years.

F. E. Wheelock, the common source of title, and wife, Sylvia, conveyed to I. L. Hunt said Section 3, Block O, on April 21, 1903. On the next day I. L. Hunt reconveyed said section to F. E. Wheelock who, on February 13, 1907, conveyed to Penney & Black a part of said Section 3, described by metes and bounds as follows: "Beginning 30 feet South of the N.E. Corner of the said Sur. No. 3; Thence South on the East Boundary line of said survey 1237½ feet; Thence West 1760 feet; Thence North 1237½ feet to within 30 feet of North boundary line of said Survey; Thence East 1760 feet to the place of beginning, containing 50 acres."

On December 18, 1907 F. E. Wheelock conveyed to Brown a portion of said Section 3, meted and bounded as follows: "Beginning at a stake 30 feet south of the north west corner of said survey No. 3 in Blk. O for the northwest corner of this tract; thence south with west line said Sur. No. 3, Blk. O, 1237 and ½ feet to stake for southwest corner this tract; thence east 3520 feet to stake the south west corner of a fifty acre tract of land heretofore sold by said F. E. Wheelock to R. E. Penney and Alvis Blake for the southeast corner this tract; thence north on Penney and Blake west boundary line 1237 and ½ feet to Penney and Blakes northwest corner which is 30 feet south of the north boundary line of said Sur. No. 3 for the northeast corner this tract; thence west 3520 feet to the place of beginning and containing 100 acres of land."

J. W. Boyd and Miller Boyd on July 8, 1926 acquired by a regular chain of conveyances title to one acre of land out of said Survey 3, described as follows: "Beginning at the northwest corner of the 50 acre tract conveyed by Wheelock to Penney & Blake; thence east along the north line of said 50 acre tract 151.28 feet to a point;

thence south 288 feet to a point; thence west 151.28 feet to a point in the west line of said 50 acre tract; thence north along the west line of said 50 acre tract 288 feet to the place of beginning, containing one acre of land."

On January 9, 1935 the City of Lubbock purchased the 100-acre Brown tract from the owner, who conveyed the land by the same description contained in the deed of the tract to Brown on December 18, 1907 by Wheelock. On August 19, 1935 the City of Lubbock conveyed to the State of Texas with other tracts the north part of the 100-acre Brown tract which by the description abutted upon the discontinued part of the Lubbock-Emma road on the south and in the same deed the city conveyed the south part of Section 1, Block A, which by the description abutted upon the discontinued part of said road on the north. The consideration for this conveyance from the city to the State was an agreement upon the part of the State of Texas and the Federal Government to expend large sums of money to improve, beautify and maintain the land as a State Park. The discontinued part of the road separated the land conveyed to the State so a portion of the park was on each side thereof and the State refused to accept the title conveyed to it and improve and maintain a park thereon unless the part of the road discontinued by order of the commissioners' court was closed. We here insert a plat which will assist in understanding the location of the road, the discontinued part thereof, the lands of the park abutting thereon and also the Boyds tract.

On September 9, 1935 a written application signed by a sufficient number of qualified citizens petitioned the commissioners' court of Lubbock County to discontinue that part of the old Lubbock-Emma road—separating the park land—beginning at the northwest corner of Section 3, Block O, and the southwest corner of Section 1, Block A, extending east with the common line between said sections a distance of two-thirds of a mile to the northeast corner of the Brown 100-acre tract.

Thereafter, on October 14, 1935, at a regular meeting of the commissioners' court with all the members thereof present the following order was passed:

"There came on for consideration the petition of P. F. Brown and 8 other freeholders of Lubbock County, interested in discontinuing the road hereinbelow defined, asking for a discontinuance of said road:

"Beginning at the NW cor. Sec. 3 Blk O and the SW cor. Sec. 1 Blk A, Lubbock County, Texas; Thence East along and with Section line two-thirds of a mile to the NE corner of the P. F. Brown 100 acres east of Lubbock, the same being a point in the north line of said Sec. 3 Blk O and ending at said point the NE cor. of the P. F. Brown 100 acres, the same being a point in the north line of said Sec. 3, Blk O in Commissioners Precinct No. 3, the whole distance being two-thirds of a mile. It appearing that notice has been given as the law directs and that said petition should be granted, it was therefore unanimously ordered that said petition be granted and that said road so described be discontinued as authorized by law."

The record is uncertain but indicates that some time in December, 1936 or January, 1937 barricades were constructed across the road, one at the northeast corner of the Brown 100-acre tract, the northwest corner of Boyds tract, and one at the northwest corner of the Brown tract, and these barricades closed the road for a distance of two-thirds of a mile and effectually prevented all traffic between the barricades and no new road was or has been constructed connecting the parts of the road discontinued.

On September 29, 1937 the plaintiffs, J. W. Boyd and Miller Boyd, instituted this suit in the District Court of Lubbock County, Texas, against J. J. Dillard, the County Judge, P. B. Penney, J. D. Pinkston, T. L. Holt and V. G. Harris, the commissioners individually and in their official capacity, to compel them to remove the barricades which had been erected under the authority of the court's order across the Lubbock-Emma road. The plaintiffs also sought to recover damages which they alleged they had sustained on account of the closing of the road.

The county judge and county commissioners filed a plea in abatement urging that the suit be abated because the land abutting on both sides of the road discontinued was at that time the property of the State of Texas and under the control and management of the State Park Board which claimed and asserted ownership of said land for the State.

This plea was sustained and by a second amended petition the members of the State Park Board, Wendell Mayes, J. V. Ash, Tom L. Beauchamp, Kennedy M. Clapp, Gus F. Urbantke and Pat M. Neff, were made parties to the suit.

In their amended petition the plaintiffs alleged the opening of the Lubbock-Emma road, the use thereof by the public for nearly half a century, the petition of the freeholders to the commissioners' court to have the part of the road between the barricades discontinued, the order of the court discontinuing said portion of the road and their ownership of the Boyds tract; improvements thereon of the value of $3,000; that they operated a slaughter house and packing plant on the tract in connection with their meat market situated on Broadway Street in the retail business center of the City of Lubbock; alleged the damages they had sustained by virtue of closing said road; pleaded that the closing thereof was unlawful, illegal, void, unauthorized and capricious, all of which was known to the members of the commissioners' court and the individual members of the State Parks Board; that plaintiffs had no adequate remedy at law and were invoking the equity powers of the court for a mandatory writ compelling the removal of the barricades from across the road.

The plaintiffs alleged in the second paragraph of their amended petition relative to the members of the State Parks Board that: "In all of these defendants' acts hereinafter enumerated, although purporting to act in their official capacities as members of the Parks Board, yet such acts were illegal and void and done in their individual capacities, and not in their official capaci-

ties, for such acts were not authorized by law nor done under color of law, therefore, said acts of the individuals comprizing said Parks Board and/or their agents, were not the acts of said Parks Board but on the contrary were the individual acts of said members. All subsequent reference to the acts of the individuals comprizing the Parks Board, although designated for the purpose of convenience as acts of the Parks Board, refer to acts performed in their individual, and not in their official capacity, whether expressly so stated or not."

The county judge and commissioners' court answered by general demurrer, special exceptions, general denial, specially denied the equities of plaintiffs' bill; alleged that they acted legally and had in good faith exercised their best judgment and discretion in passing the order discontinuing the portion of the road; that the City of Lubbock owned the land abutting on each side of the part discontinued; that the State of Texas and the United States Government had agreed in consideration of the conveyance to the State of the property to improve, beautify and maintain a State Park; that the discontinued portion of the road divided the park property into two parts and rendered it impracticable for the improvement and beautification thereof without discontinuing that part of the road; that the State demanded before it would accept the title to the land that the portion of the road dividing the park.,be discontinued; asserted the freeholders' petition filed for closing the road, the proper publication of the notices; alleged that the part discontinued was used but little by the traveling public, was almost impossible to maintain; that onethird of a mile east of plaintiffs' property the Lubbock-Emma road was intersected by a graded road running north and south which intersected the paved highway onehalf mile south, which leads directly into the main retail business section of Lubbock where the plaintiffs operated their meat market; that this route existed when the order of the commissioners' court was entered and the barricades erected and this route offered ready and accessible means of ingress and egress to the slaughter house and also ready communication by a public road between the slaughter house and the meat market of plaintiffs who, they say, are estopped from complaining of the discontinuance of the part of the road for the reason that with full knowledge of

the petition and the order of discontinuance they acquiesced in the expenditure of large sums of money on improving and beautifying the park and made no complaint or protest until the filing of this suit.

There was no answer by the State Parks Board as such but the members thereof as individuals filed a plea to the jurisdiction of the court claiming that the State was a necessary party and could not be sued without its permission. They also pleaded as individuals a general demurrer, general and special exceptions and general denial; alleged that the acts done by each was in his official capacity as a member of the board in the performance of his official duty and that they relied on the validity of the order entered by the commissioners' court discontinuing the road. They also adopted the answer of the commissioners' court.

At the beginning of the trial the plaintiffs abandoned the recovery of damages but reserved the right to offer proof to show they had sustained special damages in support of their alleged equitable right to compel by mandatory injunction the opening of the road.

On February 12, 1940, after a hearing before the court without a jury, judgment was rendered denying the injunctive relief sought, from which action of the court this appeal is prosecuted.

 Before entering into a discussion of the errors urged by the appellants we wish to dispose of the plea to the jurisdiction of the court presented by the members of the State Parks Board in a crossassignment of error. Since these appellees were sued as individuals only, the fact that the title to the land was vested in the State does not render the State an indispensable party to this litigation. The members of the board were we think State officers, Splawn et al. v. Woodard et al., Tex.Civ. App., 287 S.W. 677, but inasmuch as the appellants sought only to obtain equitable relief against the members of the board acting as individuals and not as officials we are of the opinion that the court correctly overruled the plea to the jurisdiction.

 While it is not necessary for us to so determine we are of the opinion that the exceptions urged by these appellees to the sufficiency of the allegations in plaintiffs' petition relative to compelling them as individuals to remove the barricades and open the road, should have been sustained

as we are aware of no equity power vested in the court which would authorize compelling an individual to undo, set aside and make null what he had done in his official capacity.

The appellants by several assignments contend that in addition to an easement common to the general public they had a private easement or property right in the part of the road discontinued and that the order of the commissioners' court discontinuing such portion was illegal, invalid and void and that subsequently closing the road by barricades was in violation of both the criminal and civil statutes of the State and the court committed reversible error in refusing to issue its mandatory writ of injunction against the defendants and each of them commanding and compelling them to remove or cause to be removed the barricades and have the highway opened to them and the public for travel.

The Constitution of the State, article 11, section 2, and article 16, section 24, Vernon's Ann.St., provides that laying out, constructing, working and repairing county roads shall be authorized by general law.

Article 2351, Vernon's Annotated Civil Statutes, provides that the "commissioners court shall * * * 3. Lay out and establish, change and discontinue public roads and highways. * * * 6. Exercise general control over all roads, highways, ferries and bridges in their counties."

Article 6703, among other things provides: "No public roads shall be altered or changed except to shorten the distance from end to end, unless the court upon a full investigation of the proposed change finds that the public interest will be better served by making the change; and said change shall be by unanimous consent of all the commissioners elected. No part of a public road shall be discontinued until a new road is first built connecting the parts not discontinued."

The order was unanimously passed and the record is sufficient to warrant the trial court in finding that the action of the commissioners' court was neither arbitrary nor capricious but was made upon full investigation of the facts from which the commissioners concluded that the interest of the public would be better served by a discontinuance of the portion of the road prescribed in their order.

In Fry et al. v. Jackson et al., Tex.Civ. App., 264 S.W. 612, 616, the court says: "It is to be noted that in the consideration of article 6861 [now 6703] that the commissioners' court is given full power to alter or change the course of a public road, if 'upon a full investigation of the proposed change' it 'finds that the public interest will be better served by making the change,' and 'that said change shall be by unanimous consent of all the commissioners elected.' * * * It is to be further noted in considering this article that the power of the commissioners' court to change the route of a public road upon application and notice, and after full investigation, is limited only by the necessity of a finding that the public interest will be better served by making the change. In making such investigation no procedure is prescribed; no definition is given of the character of the public interest that shall be controlling, and from the findings no appeal is provided."

■ From the facts we conclude that there is no basis for an attack upon the good faith of the commissioners' court or the members of the State Parks Board.

Section 9 of article 6081d, Title 103, creating the State Parks Board and authorizing the establishment of State Parks and the acquisition of land therefor reads as follows: "Any roadway upon land acquired by any city under authority of this Act for the purposes herein prescribed or upon which there abut both sides lands of any city and county the exclusive control of which may be vested in the one or the other under the terms hereof may be closed by order of the Commissioners' Court of the county in which such roadway is located and thereafter all rights which the State may have in and to such roadway shall be considered as terminated and surrendered to the county or city as the case may be."

■ This statute clearly delegates to the commissioners' court greater authority for closing roads which extend through and are abutted on both sides by lands the title to which has been acquired by cities for park purposes than had theretofore been granted, and under this statute the appellants were not entitled to the equitable relief afforded by a mandatory injunction.

Did appellants have a private easement or property right in the part of the road discontinued by order of the commissioners' court? Their property was a tract outside the corporate limits of the city of Lubbock. It had never been platted into lots, blocks or tracts. The road had never been dedicated for either public or private use. The appellants and none of their predecessors in title purchased the Boyds

tract by any plat or map. The road was surveyed by a jury of view appointed by the commissioners and established by the order of the commissioners' court.

 The rule seems to be that private easements are acquired by contracts such as obtain when land is purchased by reference to, and reliance upon some map subdividing land into lots, blocks or tracts and dedicating the streets or roads therein for use as such.

In Lee v. City of Stratford, 125 Tex. 179, 81 S.W.2d 1003, in answer to a certified question, the Supreme Court says: "The property owned by appellant, Lee, is acreage, and there is nothing to show that it was purchased with reference to or in reliance upon the official map and plat of the city of Stratford. There can therefore be no contention that he possesses what is known as a private easement in any of the avenues in question. Hartwell Iron Works v. [Missouri-Kansas-Texas] Railway Company (Tex.Civ.App.) 56 S.W.(2d) 922."

See also Fry v. Jackson, supra; City Com'rs of Port Arthur et al v. Fant et al., Tex.Civ.App., 193 S.W. 334; McCammon & Lang Lumber Co. et al. v. Trinity & Brazos Valley Ry. Co., 104 Tex. 8, 133 S.W. 247, 36 L.R.A.,N.S., 662, Ann.Cas. 1913E, 870; Johnson v. Lancaster et al., Tex.Civ.App., 266 S.W. 565; Simons et al. v. Galveston, H. & S. A. Ry. Co. et al., Tex.Civ.App., 57 S.W.2d 199, in which the court distinguishes the holding therein from the cases of Meyer v. Galveston, H. & S. A. Ry. Co., Tex.Com.App., 50 S.W.2d 268, and Commissioners' Court of Harris County et al. v. Kaiser et al., Tex.Civ.App., 23 S.W.2d 840. In the Simons case the fact issues we believe present the same legal questions here under consideration.

 While the description in the deeds constituting the chain of title to appellants did not anywhere call for the road as a boundary line of the tract it is obvious from the record that Boyds tract abutted on a part of the road not discontinued. It is also manifest that title to the land owned by the State lying on each side of the discontinued portion of the road extended to the center thereof. Cox et al. v. Campbell et al., 135 Tex. 428, 143 S.W.2d 361; Rio Bravo Oil Co. et al. v. J. W. Weed et al., 121 Tex. 427, 50 S.W.2d 1080, 85 A.L.R. 391.

Article 1, Section 17, of the Constitution of the State reads as follows: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities, shall be made; but all privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof."

Was appellants' property taken?

 In Kahn v. City of Houston et al., 121 Tex. 293, 48 S.W.2d 595, 598, the Supreme Court in answer to certified questions holds that there is a distinction between the terms property "taken" and property "damaged or destroyed"; and the requirement that compensation shall be made for property before it is "taken" does not obtain where the property is only "damaged or destroyed". The court then says: "This distinction is important when the aid of equity is invoked, because (unless there is a 'taking'), if there be available an adequate remedy at law in damages, equity will not intervene by injunctive relief."

The property of Mr. Kahn did not abut on Washington Avenue sought to be closed by the City of Houston and the court concludes that the closing of such avenue was not a taking of Mr. Kahn's property and therefore he was not entitled to an injunction to prevent the closing of the avenue until the property had first been condemned.

In Fry v. Jackson, supra, it is held that this article of the Constitution has no application because it appears from the record that Fry et al. did not own land abutting upon the part of the public road that would be submerged or used in establishing the reservoir but their properties were situated east of the proposed reservoir abutting upon a part of the road not taken.

 The appellants' tract did not abut on the part of the road discontinued and if they could compel the removal of the barricades by a mandatory injunction we conceive of no reason why any landowner whose property abutted on any part of the road not discontinued, from the Boyds tract east to the boundary line of Lubbock County, would not be entitled to the same remedy. No part of the appellants' prop-

854

erty abutted on the discontinued part of the road and no part of their property was taken and while they probably suffered some loss to their business, for this they had an adequate remedy in damages, the recovery of which they abandoned, and in our opinion they are not entitled to the mandatory injunction sought.

The record reveals that the question of establishing a State Park, the acquisition of the land therefor and inducing the State and Federal Government to improve, beautify and maintain the park had been under consideration for some time by the city and county of Lubbock; that the State had agreed to maintain the park but refused to accept title without the portion of the road separating the land upon which the park was to be maintained should be discontinued; that a petition was filed by the citizens for discontinuing that portion of the road; that the order of discontinuance was made on October 14, 1935; that barricades were erected in December, 1936, or January, 1937; that appellants made no protest under the proof until they instituted this suit on September 29, 1937; Alexander et ux. v. Schleicher County, Tex.Com.App., 3 S.W.2d 75; that prior to that time there had been expended some $292,000 on improving, beautifying and maintaining the park; that approximately 300,000 people visited the park annually and under these facts and the other circumstances in the record we hold that appellants were estopped from asserting the equitable relief prayed for. Sigel v. Buccaneer Hotel Co., Tex.Civ.App., 40 S.W.2d 168; Los Angeles Heights Independent School Dist. et al. v. Chestnut et al., Tex.Civ.App., 287 S.W. 693.

The judgment is affirmed.