UVALDE COUNTY V. D. OPPENHEIMER ET AL.

Decided January 6, 1909.

**1.—Evidence—Deed—Description of Land—Identity.**

In a suit involving the title to a small strip of land of a league and labor survey, a deed describing the land conveyed as 975 acres being the undivided interest of the vendor in the survey less 700 acres previously sold out of the survey, was admissible when offered as a link in the chain of title to the strip, over objection that the description shows that 700 acres had been sold off and there was nothing to show what 700 acres or that it was not the part in controversy, on assurance from counsel that evidence would be introduced later tending to make certain the land conveyed by the deed.

**2.—Same.**

To show title to the strip the party offering the deed was required to show that it was not a part of the 700 acres previously sold off; and a prior deed conveying 640 acres of the survey, standing alone, was insufficient for such purpose because it left 60 acres unaccounted for.

**3.—Same—Recitals in Deeds.**

A recital in a deed that "the town of North Uvalde is laid off" upon the land conveyed, simply showed that as between the grantor and grantee the land conveyed was understood to cover the town site, and was not evidence that the latter was situated upon that portion of the survey, with respect to one not a party to the deed.

**4.—Trespass to Try Title—Burden of Proof.**

In trespass to try title the plaintiff must affirmatively show title to the very land sued for, and the rule applies though a county is the defendant and is claiming only some roadways that it has acquired by prescription or limitation.

**5.—Same—Proof of Title.**

In trespass to try title a defendant may fail in establishing a title by limitation or prescription, and still the plaintiff cannot recover unless his title is affirmatively disclosed.

**6.—Roads—Commissioners' Courts—Powers.**

Roads not acquired under the provisions of the statute are not subject to said provisions, and the Commissioners' Court has the power to discontinue them.

**7.—Same—Changes.**

Where a road not acquired under the statute ran through land which was divided into lots and streets to form a town site, an order of the Commissioners' Court permitting the owner of the fee to conform the road to follow the streets, all streets to be cleared, graded and put in first-class condition, was valid, and not conditional in the sense that it was not to have effect until the new routes were cleared and graded.

Appeal from the District Court of Uvalde County. Tried below before Hon. R. H. Burney.

*W. D. Love* and *I. M. Milam,* for appellant.

*Webb & Goeth* and *G. B. Fenley,* for appellees.

JAMES, CHIEF JUSTICE.—The action, as prosecuted to trial, was by appellees against the County of Uvalde to try title to certain lots and blocks of land in the towns, etc., known as North Uvalde, alleged to be owned by plaintiffs. The petition alleged the subdivision by them of about two hundred acres into what is known as North Uvalde in January, 1882. That no public roads had ever been laid out agreeably to law over said property, and that plaintiffs, in May, 1906, applied to the County Commissioners' Court of Uvalde County for the purpose of having roadways, confining travel to the streets and highways of said subdivision, and in pursuance thereof the court ordered that D. & A. Oppenheimer "be and are hereby allowed to change the streets from the south line of North Uvalde to the depot (G., H. & S. A. depot) as follows: From the intersection of Getty Street with the south line of North Uvalde following Travis Street to Sabinal Street, thence with Sabinal Street to Main Street, thence with Main Street to depot. Also from the intersection of High Street with the south line of North Uvalde following Houston Street to Sabinal Street, thence with Sabinal Street to Main Street, thence with Main Street to depot. Also Oppenheimer Street from Travis Street to High Street. All these streets to be cleared, grubbed, graded and put in first-class condition." That after said order plaintiffs, at great expense, caused said streets to be cleared, grubbed, graded and put in first-class condition, and at a subsequent date, in February, 1907, the said order was again considered and ratified and confirmed by the Commissioners' Court. That at a later date,

May 13, 1907, the said court, without any notice to plaintiffs or knowl-
edge by them, entered an order rescinding the order of May, 1906, and
declaring the roads to exist as they formerly were, because "it is the
opinion of the court that the public interest will be better served by not
permitting said road or highway to be closed, but to remain open and
be used as it had been used for over twenty years by the public with the
authority, sanction and claim of right by this court."

The petition alleges, in effect, that the roads referred to in the order
of May, 1906, were abandoned and discontinued, and thereby changed
as specified therein, and that the attempted annulment of said order
operates to serious and irreparable loss and damages to plaintiffs. The
prayer was for the writ of injunction, and for judgment for the title
and possession of the property described, and for writ of possession,
and there was also a prayer for damage against a defendant, Geo. A.
Kennedy, who, however, was dismissed from the action, and the allega-
tions in reference to him need not be recited.

The issues may be expressed, copying from appellant's brief: "The
matter in controversy is the right and title to certain roadways claimed
by the defendant, Uvalde County, which roads defendant alleged to be
public roads, and which traverse or run over the lots sued for by plain-
tiffs. Defendant answered the petition of plaintiffs by general denial,
plea of not guilty, and plead title to said roads by prescription and by
ten years limitations." There was a peremptory charge for plaintiffs.

The assignments of error from one to eight relate to the sufficiency
of the proof of plaintiffs' title. The evidence shows that North Uvalde
is situated upon the Carlos Huizar survey, No. 72, of a league and labor,
patented to Wm. Richardson, assignee. The title to this survey subse-
quently became vested in S. H. Luckie, who willed all his property to
Wm. F. Luckie, who, by deed of gift, conveyed to his four sons, Wm. P.,
Sam B., Eugene M. and Cornelius B. Luckie, all the property he had
derived from S. H. Luckie.

Plaintiffs' next deed was from Eugene M. Luckie to David Brown for
his one-fourth interest in the remaining part of said league and labor,
reciting "there having been seven hundred acres sold out of said league
and labor, my interest in said league and labor amounting to 976 acres
more or less."

Next, a deed from David Brown to D. & A. Oppenheimer for the
land conveyed to him by Eugene M. Luckie, 976 acres more or less, it
being the undivided interest of Eugene M. Luckie in and to one-fourth
of the Huizar survey, No. 72, less 700 acres previously sold out of said
league and labor.

Next, a deed from Samuel B. Luckie to William B. Knox for a
fourth interest in the league, and a deed from C. B. Luckie to Knox to
his fourth interest, and a deed from W. P. Luckie to Knox for his
fourth. These deeds make no mention of any part having been sold off.
The Knox interest appears to have become vested in D. & A. Oppen-
heimer through various conveyances from his widow and others holding
under him.

Assignments one, two, three and four assert that the court erred in
admitting in evidence the deed from Eugene Luckie to David Brown
because the description therein shows that 700 acres of the league had

been sold off and there is nothing to show what 700 acres, or that it is not the part in controversy. Objection was made to the introduction of the deed from David Brown to Oppenheimer, and deeds from Rachel J. Knox to D. & A. Oppenheimer, for the reason that it had been shown by recitals in deeds introduced by plaintiffs that 700 acres of the survey had been previously sold off, which 700 acres was not identified, nor shown that it does not consist in part of the land sued for. The court overruled the objection made to the deed to David Brown and the deed from David Brown to D. & A. Oppenheimer, when informed by plaintiffs' counsel that they would later introduce evidence tending to show and to make certain the land conveyed thereby. To this ruling an exception was taken. Afterwards, for the purpose of identifying and locating the 700 acres excepted, plaintiffs offered a deed from S. H. Luckie to Chas. de Montel, executed in 1850, which conveyed 640 acres of the survey, "said 640 acres is to commence on the west bank of the Leona River at the corner of sur. No. 71, to run with line of 71 and 72 to the S. W. corner of sur. 72; thence N. 25° W. Thence N. 65° East to Leona River; thence down said river so as to include the amount of 640 acres." This deed was objected to upon the ground that there was nothing in the record to identify this deed as being the same referred to in the deeds excepting out of the grant 700 acres, which objection was overruled and exception taken.

The court did not err in admitting the deed to Brown and the deed from Brown to Oppenheimer, when it did so with the assurance that plaintiffs would introduce proof to make the land described certain. Defendant is entitled, however, to the benefit of the objection made later, when the deed to Montel was offered for that purpose, if there was any error in admitting it. There was no error in admitting it because, when read in connection with the patent, the 640 acres it embraces is made clear to be in the southwest part of the survey between the west line and the west bank of the Leona River, and for the further reason that it accounts for that much (640 acres) of the 700 acres which the said two deeds declare had been sold off. Beyond this there was no testimony to show the locality of the 700 acres, and there was still 60 acres apparently outstanding. Plaintiffs introduced said two deeds as a part of their chain of title, and this made it appear that prior to the deed from Eugene M. Luckie to David Brown, which was in 1871 (the deeds to Knox from S. B. Luckie, C. B. Luckie and W. P. Luckie were executed in 1877 and 1878), 700 acres had been sold off. Had the deed stated "about 700 acres" it might have been said that it was explained by the deed to Montel calling for 640 acres. But the deed says 700 acres, and that this was meant to be exact and not a mere estimate is indicated by the fact that the deed states that the grantor's fourth interest consisted of 976 acres. We think, in view of the recital in said deed, that plaintiff, in order to show title to the land in controversy, was required to show, directly or by circumstances, either that the call for 700 acres was a mistake, and had reference to the conveyance to Montel, or that no deed was extant or upon the records but the one to Montel; and furthermore, it must have been made to appear that the land in controversy was not a part of the land so previously sold off. This matter is not presented by the said assignments from one to four. But it is by the

eighth assignment, as follows: "The court erred in giving a peremptory instruction to find for plaintiffs and not instructing the jury to find for defendants, because the plaintiffs failed to show in themselves (title) to the land in controversy, in this: That plaintiffs introduced a deed in evidence from S. H. Luckie to Chas. de Montel dated January 8, 1850, for 640 acres of land out of said survey No. 72, which 640 acres plaintiffs do not claim to have title to, but said deed was introduced to account for and locate the 700-acre tract mentioned in the deeds constituting plaintiffs' chain of title to the lands claimed by them, and it is nowhere shown in the records of this case that the town-site of North Uvalde, the lands in controversy, is not located on said 640-acre tract."

We have stated that it appears that the 640-acre tract is of the southwest portion of the survey 72. But we have found no testimony of direct character to show on what part of the survey the town-site is located. In a deed from Rachel J. Knox to D. & A. Oppenheimer there is a recital that upon the land in survey No. 72, conveyed by her to D. & A. Oppenheimer, "the town of North Uvalde is laid off." Appellees claim this to be testimony showing that the town-site is situated upon that portion of the survey acquired by plaintiffs. But the effect of the recital is simply that as between the grantor and grantees the land conveyed was understood to cover the town-site. It was their construction of what W. B. Knox had acquired. It was merely their declaration, and was not evidence with respect to defendant. (Baird v. Patillo, 24 S. W., 813; Houston v. Blythe, 60 Texas, 512.)

It is further contended that as defendants make no claim to any land in the survey except some roadways, which it had acquired by prescription or limitations, it is a naked trespasser. The answer to this is that as to a naked trespasser plaintiffs must affirmatively show title to the very land sued for. It is also contended that "as Uvalde County could not successfully make its claim by prescription available without admitting that the Oppenheimers were the owners of the property, and if this admission is made appellant's assignment must fail, for the reason that the county will not be permitted in one breath to admit that the title was good in the Oppenheimers and their descendants, and that the county claims title under them by prescription, and in the next moment repudiate the title of the Oppenheimers and claim that they have not shown title to the property. The effect of the plea of limitations of ten years was equivalent to acknowledging that D. & A. Oppenheimer own the property unless the county has acquired it under them by limitations, and with this admission on the part of the county proof of such title would become wholly unnecessary." With this we do not agree. A defendant might fail in establishing a title by limitations or prescription, and still plaintiff could not recover unless his title was affirmatively disclosed.

Plaintiffs' title papers evidencing the fact that plaintiffs' interest consisted of all the survey except 700 acres previously sold off, the uncertainty or doubt as to whether the town-site is located upon plaintiffs' land or upon the land sold off, should have been removed by some testimony. (Jones v. Fancher, 61 Texas, 699.) There was nothing in evidence tending to show that the town-site was upon land that had previously been sold off and not upon the land covered by plaintiffs' deeds.

There was, however, what, to our minds, is circumstantial evidence that it was not upon land that had been sold off, and there was nothing to the contrary. Plaintiffs owned the W. B. Knox title. About the year 1882 the holders of that title subdivided the town-site of North Uvalde. In 1881 and 1882 they deeded to the G., H. & S. A. Ry. Co. its track and grounds, as the same appears upon the plat of Wm. Benson of the subdivision in 1882. Since that time they have sold off, from time to time, lots to the number of several hundred. The taxes have been paid by them. Their title appears to have been unquestioned. Their control of it has been active, notorious and continuous. It seems to us that these facts are circumstances inconsistent with the idea that the town-site is situated upon land in the survey the title to which became vested and outstanding in other parties prior to 1850. But this would be a presumption of fact, and not such a presumption as the court would have been authorized to declare as a matter of law. It would have been for the jury to make conclusions from said facts. (Stooksbury v. Swan, 85 Texas, 563.) We conclude that it was error for the court to assume that plaintiffs had shown title to the land covered by the town-site.

The assignments from nine to twelve inclusive present these propositions: 1st. The court erred in not submitting to the jury the question of fact as to whether or not defendant had shown title to the roads in question by limitations or prescription. 2d. The court erred in holding that the order of the Commissioners' Court of May, 1906, changing the roads, was valid and binding, because the court had no power to change an established road except upon the petition of at least one freeholder of the precinct and twenty days' notice. 3d. That it erred in holding that said order was not a conditional order, and that performance within a reasonable time of the condition was not essential to its binding force. We may dispose of these matters by considering the validity and effect of the order.

The roads in question were not acquired under the provisions of the Revised Statutes, and were not subject to such provisions. The County Commissioners had power to discontinue them. The order in question was not conditional in the sense that it was not to have effect until the new routes were cleared, grubbed, etc. The case of Morris v. Cassady, 78 Texas, 515, appears to be decisive of the subject. The order was made to conform the roads to the subdivision and to follow street lines therein, instead of allowing them to remain and cut obliquely through blocks and lots, and to render them available for sale. The roads were not closed nor really abandoned, but their routes through the subdivision were substituted by other ways through it, deemed convenient. A year after said order was made, the court rescinded it without notice. In the meantime plaintiffs had sold a number of the lots that were previously traversed by the roads, by deeds warranting the title. The order had thus been acted upon. It is not deemed necessary to say that the new routes had been cleared, grubbed and placed in condition, because appellant claims there was an issue of fact here. Plaintiffs introduced evidence showing that the work had been done before the rescinding order was made. Appellant cites in its brief the testimony of its witness Hope, as contradicting this. The testimony of this witness is entitled to little weight as contradictory evidence after he stated that he

was "not present when Capt. Benson opened roadways over the property in 1906, and I don't know the extent of the work that Capt. Benson did or caused to be done. I did not, for the purpose of identification, go down and see what work had been done by Capt. Benson. If Capt. Benson ever opened up a street I have no knowledge of it; if he opened up a road I don't know it. He may have opened several. He could have opened up all of them and I could not have known it. It is not in my jurisdiction."

Having determined that the order of 1906 was valid and remained so, it makes no difference whether or not the county had actually acquired a right to the roads by limitations or prescription.

*Reversed and remanded.*