**JOHNSON v. LANCASTER et al. (No. 6797.)**

(Court of Civil Appeals of Texas. Austin. Oct. 29, 1924.)

**1. Municipal corporations ⬤⟿657(2)—City held empowered to close streets in public interest, subject to legal limitations.**

Under Denton City Charter, incorporated under Gen. Laws 1913, c. 147 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i), such city held to have right to close its streets when necessary or proper in the public interest, subject to legal limitations, Gen. Laws 1913, c. 152 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 854–854c), not applying.

**2. Eminent domain ⬤⟿100(6)—City's abandonment and closing of street held not taking of property within Constitution requiring payment in advance.**

As respects property owners' right to injunction, city's abandonment and closing of street held not taking of owner's property within Constitution requiring payment in advance, such owner being entitled only to damages for the deprivation of whatever rights he had.

**3. Injunction ⬤⟿5 — When mandatory injunction will not be granted.**

Mandatory injunction will not be granted unless extreme or very serious damage will ensue from withholding the relief, and will not issue where injury complained of is capable of compensation in damages, or where enforcement would require too great an amount of supervision by courts.

**4. Municipal corporations ⬤⟿657(7)—Evidence held to show property owner was not damaged by closing of street.**

Evidence held to show property owner was not damaged by closing of street by city.

Appeal from District Court, Denton County; C. R. Pearman, Judge.

Suit by J. F. Johnson against J. L. Lancaster and others, as receivers of the Texas & Pacific Railway Company, and against the city of Denton. Judgment for defendants, and plaintiff appeals. Affirmed.

J. Newton Rayzor, of Galveston, for appellant.

George Thompson and R. S. Shapard, both of Dallas, and Head, Dillard, Smith, Maxey & Head and J. F. Holt, all of Sherman, for appellees.

McCLENDON, C. J. J. F. Johnson, the appellant, brought this suit against the receivers of the Texas & Pacific Railway Company and the city of Denton, for a mandatory injunction to compel them to reopen Collins street west of appellant's premises, and in the alternative for $2,000 damages alleged to have accrued to appellant as the result of unlawfully closing that street. The cause was tried to the court without a jury, resulting in a judgment in favor of appellees. From this judgment this appeal is taken.

The evidence which is largely without dispute will support the following findings:

Some time in the year 1921, the city of Denton constructed two highways leading

from the south terminus of south Locust street at Mills street in the city of Denton. One of these highways was known as the Fort Worth-Denton road, and the other the Dallas-Denton road. After the construction of these highways the situation thus created with reference to appellant's property is represented by the following plat which was admitted in evidence in connection with the testimony of the city engineer while testifying as a witness for appellant:

Appellant's property abuts on the south line of Collins street, and is east of the Texas & Pacific right of way. Prior to the construction of these roads, Collins street extended from Johnson street on the west to Myrtle street on the east, the latter being distant from appellant's residence some 1,200 feet. The only other residence on Collins street was east of the Texas & Pacific Railway. The street was not used as a thoroughfare in going to or from the

city except by the residents on the street. In going from appellant's residence to the business portion of Denton, the shortest and most convenient route, and the one usually traveled by appellant, was east on Collins to Johnson street, and thence north on Johnson and Mills streets, crossing the Texas & Pacific at the Mills street grade crossing. The construction of the Dallas-Denton road reduced this distance some 200 feet and eliminated the grade crossing, the crossing on that road being constructed underneath the railway. The only other exit from plaintiff's property was west on Collins street to Myrtle street, which was considerably longer and much more inconvenient. The evidence will support a finding that Collins street was very infrequently traveled and was rather rough. In opening up the Fort Worth-Denton road south of Mills street, Collins street was physically closed by raising the grade of the Fort Worth-Denton road several feet where it crosses Collins street. After the construction of this road and the physical closing of Collins street, the receivers proceeded to abandon the grade crossing at Collins street. On December 12, 1921, shortly after the receivers abandoned the crossing, and several months after the Fort Worth-Denton road had been completed, the city attempted to formally close Collins street by passing a resolution to that effect.

There was some evidence that the distance from plaintiff's residence to the business portion of the town by way of Collins street and the Fort Worth-Denton road would be from 200 to 300 yards shorter than by way of Johnson street and the Dallas-Denton road. None of these witnesses had made any measurements, but merely estimated what, in their judgment, the difference in distance by the two roads would be. The city engineer, testifying from actual measurements, placed this difference at not exceeding 117 feet, and the plat in evidence more nearly corroborates the city engineer than the other witnesses.

Neither in his pleadings nor in his evidence did appellant show in what manner a feasible grade connection could be made between the Fort Worth-Denton road and Collins street. The testimony of the other witnesses is all to the effect that this could be done only in one of two ways—either by lowering the grade of the Fort Worth-Denton road at considerable expense, or by raising the grade of the railway, at perhaps a much larger expense. These witnesses testified that the grade from the lowest point on the right of way to the point where Collins street was intersected by the Fort Worth-Denton road was very steep before the construction of the latter road, and that, unless there was a lowering of the grade of that road or raising of the railway grade, the grade between the Fort Worth-Denton road and the low point on the Texas & Pacific right of way would be very steep and dangerous, and practically an impossible grade. Appellant did not attempt to refute this testimony.

[1] Appellant contends that the closing of Collins street by the city of Denton was without lawful authority, and that he was entitled to a mandatory injunction requiring the opening of the street, regardless of whether he could show any substantial damage to his property. On the other hand, appellees contend that appellant is not entitled to a mandatory injunction for two reasons. In the first place, it is asserted that the city of Denton acted within its legal rights in closing the street; and, in the second place, that appellant would not in any event be entitled to a mandatory injunction unless he showed some substantial and irreparable injury; which latter is negatived by the evidence and the judgment of the trial court.

We have reached the conclusion that both contentions of appellees should be sustained. The city of Denton has a population of more than 5,000, and prior to 1913 was incorporated under a special charter. Some time after the enactment of chapter 147 of the General Laws of 1913 (Vernon's Sayles' Ann. Civ. St. arts. 1096A–1096I) putting into effect the home rule amendment to the Constitution, the city availed itself of the benefits of that act and adopted a new charter. In this charter the city expressly reserved to itself complete control over its streets and alleys, but did not expressly reserve the right to close streets. All the powers of the city were vested in a commission of five members. By section 1, art. 1 of this charter, it is provided that the city "shall possess all powers, rights, privileges, and authority granted to cities of 5,000 inhabitants or more by the Constitution and laws of the state of Texas." Section 1 of article 2 provides:

"The enumeration of powers made in this charter shall never be construed to preclude the city of Denton, by implication or otherwise, from exercising all the powers incident to the enjoyment of local self-government, nor to do any and all things not inhibited by the Constitution and laws of the state of Texas; and all powers heretofore granted or that may hereafter be granted by general or special laws are hereby preserved to the city of Denton."

Section 4 of chapter 147 of the Laws of 1913 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1096d), provides:

"That by the provisions of this act it is contemplated to bestow upon any city adopting the charter or amendment hereunder the full power of local self-government, and among the other powers that may be exercised by any such city, the following are hereby enumerated for greater certainty."

Among these enumerated powers are the following:

"To control, regulate, and remove all obstructions or other encroachments or incumbrances on any public street, alley, or ground and to narrow, alter, widen, or straighten any such streets, alleys, avenues, or boulevards and to vacate and abandon and close any such streets, alleys, avenues, or boulevards, and to regulate and control the moving of buildings or other structures over and upon the streets or avenues of such city."

Appellant contends that section 4 does not necessarily confer upon cities taking advantage of the act the power to vacate streets, but that the use of the word "may" confers such right only in case the city in adopting its charter expressly reserves to itself that right. Appellees while contesting this construction of the act, contend further that section 1 of article 1 and section 1 of article 2, expressly, by reference, confer upon the city the right in question.

The power to close public highways is one which inheres primarily in the Legislature, but it is a power which can be delegated to municipal corporations. It has been the uniform practice of the Legislature in this state to delegate this power to cities, and especially the larger cities of the state. Chapter 147 of the Laws of 1913 clearly delegates this power to cities adopting their own charters under the provisions of that act, where such cities expressly provide in their charters that such power is assumed. We think it is unnecessary to decide whether all the powers enumerated under section 4 of the act are read into the charters of cities taking the benefit of the act, whether or not expressed in their charters. Independently of the construction to be given to the language of this section, we think it is clear that the city of Denton intended that it should have this power. The right to close a street is one which has been generally recognized by the Legislature as very essential to proper control by a city over its streets; and while the charter in setting forth the various powers of the city over its streets did not expressly enumerate the power to close streets, the first and second articles of the charter above quoted very clearly had for their purpose the reservation of all these general powers which are usually conferred upon cities by the Legislature and which are authorized in the act of 1913, although they might not be expressly enumerated in the charter. For these reasons, we think the city of Denton had the right under its charter to close streets where necessary or proper in the public interest, and subject to legal limitations.

Appellant further contends that under chapter 152 of the General Laws of 1913 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 854-854c) the right to close a public street cannot be exercised by a city unless the question is first submitted to a vote of the qualified voters. The chapter referred to amended Revised Statutes, article 854, and added articles 854a, 854b, and 854c. This contention of appellant is based upon the express language of article 854b.

It is quite clear that chapter 152 of the laws of 1913 has no application to the city of Denton. Article 854c enacted by that chapter expressly provides that the act shall be enforced in towns or cities under 5,000 population, in cities over 5,000 population which have no special charter, in towns or cities incorporated under title 22, Revised Statutes 1911, and in cities or towns incorporated under any special law. The enumeration of the particular towns and cities to which the act was to have application necessarily excluded from the provisions of the act other cities and towns not thus enumerated. If the Legislature had intended the act to be of general application to all cities and towns in the state, that intention could have been expressed in much more simple language than that which the act employs. The city of Denton had over 5,000 population; it has no special charter; it was not incorporated under title 22 of the Revised Statutes; and it was not incorporated under any special law. Its incorporation was under chapter 147, § 3, of the General Laws of 1913 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1096c), which provides, expressly, "that, when said charter or any amendment thereof shall be recorded as hereinabove provided for, it shall be deemed a public act, and all courts shall take judicial notice of same and no proofs shall be required of same."

The undisputed evidence in this case shows that Collins street was physically closed by a permanent obstruction immediately west of the Texas & Pacific right of way some months before the receivers abandoned the crossing. The act of the city of Denton effecting this closing was the exercise of a lawful right in laying out new streets. So far as the record shows there was no complaint nor objection on the part of appellant to the closing of this street until after the Fort Worth-Denton road had been completed. The evidence amply warrants the finding, if in fact it does not conclusively show, that in order to open the street so as to connect it with the Fort Worth-Denton road, the grade of the road would have to be lowered at considerable expense, or the grade of the railroad raised. The record in the case does not show any right whatever on the part of appellant to require the raising of the railroad grade, in fact, no contention is made that this should be done. The only thing asked of the receivers is that they restore the crossing as it was originally, and this relief would serve no useful purpose unless Collins street were physically connected with the Fort Worth-Denton road. To make this connection without lowering the grade of the latter would,

as the evidence clearly shows, create practically an impossible, or at any rate an impractical, situation. It would very materially increase an already very heavy grade running down a very short distance to a railroad crossing. There was no testimony of any damage to appellant's property by reason of closing Collins street at this point, except such as might be inferred from his having no outlet in that direction. On the contrary, the evidence overwhelmingly shows that by the construction of the two roads, which were built practically at the same time, appellant has a shorter, safer, and much more convenient road to the city than he ever had before. The situation, we think, should be viewed as of the date the city obstructed and effectively closed Collins street. At that time appellant did not use the street in that direction for travel to the city; nor is it shown on what occasions he did use it, or for what purposes. It was some 1,200 feet east, over a bad road to Myrtle avenue; and what advantages appellant may have had by having this outlet is not shown by the record. It is true that if the Fort Worth road had been constructed upon the same grade as Collins street, appellant, after such construction, would have had a little shorter road, to town than by traveling Johnson street and the Dallas-Denton road. But there is no intimation in the record that the Fort Worth-Denton road would have been constructed as it was except upon the grade used. If the city had been compelled to conform to the Collins street grade, the Fort Worth road might have been constructed in some other way.

[2] Conceding that plaintiff had the right to use the highway, its abandonment and closing by the city did not constitute a taking of appellant's property within the meaning of the Constitution requiring payment in advance. Lumber Co. v. Ry., 104 Tex. 9, 133 S. W. 247, 36 L. R. A. (N. S.) 662, Ann. Cas. 1913E, 870. Whatever rights appellant had in the street were clearly only such rights as would entitle him to damages for being deprived of them, and condemnation proceedings to close the street were unnecessary.

[3] Under the well-established principles governing the issuance of mandatory injunctions, we think it is clear that appellant has not brought himself within the rules of law entitling him to this relief.

"Mandatory injunctions will never be granted unless extreme or very serious damage at least will ensue from withholding the relief; and each case must, of course, depend upon its own circumstances. Such injunctions will never be issued in doubtful cases where they would operate inequitably or oppressively, where there has been unreasonable delay by the party seeking the injunction, where the injury complained of is capable of compensation in dam-

ages, or where enforcement would require too great an amount of supervision by the courts." 32 Corpus Juris, 23.

To grant the relief prayed for by appellant in this case would violate the principles announced in this quotation. In this connection, see, also, Tel. Co. v. Smithdeal, 104 Tex. 259, 136 S. W. 1049; Hill v. Brown (Tex. Com. App.) 237 S. W. 252. For the reasons indicated, it is clear to our mind that appellant is not entitled to the injunctive relief prayed for.

[4] The evidence amply supports the findings of the trial court that appellant has not been damaged, and for that reason the trial court properly rendered judgment in favor of appellees on that count.

Finding no error in the trial court's judgment, it is affirmed.

Affirmed.