**SIMONS et al. v. GALVESTON, H. & S. A. RY. CO. et al.**

**No. 9791.**

Court of Civil Appeals of Texas. Galveston.

Jan. 19, 1933.

Rehearing Denied Feb. 9, 1933.

Rose & Sample, of Edna, for appellants.

M. L. Cobb, Co. Atty., of Edna, for county et al.

Baker, Botts, Andrews & Wharton, of Houston, and Proctor, Vandenberge, Crain &

Vandenberge, of Victoria, for Galveston, H. & S. A. Ry. Co. et al.

GRAVES, Justice.

Without complying with the procedure prescribed in R. S. 1925, arts. 6703–6705, and without prior written request from or notice to appellants, or any one else other than the two appellee railway companies, that such action would be taken, the appellee commissioners' court of Jackson county, pursuant to a transaction initiated and carried out between themselves and the railway companies alone, vacated, closed, and abandoned the public crossing over the latters' railroad on Lavaca street near the town of Edna at cattle guards 67A and B, with permission to the companies to extend their fences across the same "to the effect that all public travel may be excluded therefrom," which obstructing fences were at once erected, and, in consideration as well as in lieu thereof, accepted from the companies an easement for the purpose and opened another public crossing over their railroad about 1¾ miles west of Edna at the station thereon of Matilda, otherwise known as cattle guards 68A and B.

Appellants thereafter, in this proceeding against both the railway companies and the members of the commissioners' court, sought a mandatory injunction against all the parties requiring the removal of such obstruction therefrom, the reopening of the crossing at cattle guards 67A and B, and that the commissioners' court be required to henceforth permanently maintain and keep it open as a public one for the use of themselves and the public as such, contending that the closing thereof violated the rights vouchsafed to them by article 1, § 17, of the Constitution of the state of Texas, and by the Fifth Amendment to the Constitution of the United States, in that it took their property without adequate compensation therefor and without due process of law, since they were abutting owners on Lavaca street south of such closed crossing and near to the railway right of way.

The trial court, sitting without a jury, and after hearing the evidence for both sides, refused the injunction prayed for in a general judgment to that effect, filing no findings of fact or law in support thereof.

■ On the appeal, this court approves the adverse action thus taken below; in the first place, while appellants showed themselves to be abutting owners on the opposite sides of Lavaca street south of and 75 feet distant from the 100 foot wide right of way of the railway companies and of the closed crossing, they wholly failed to show that they had any private or other or different right in the crossing than that possessed by the general public, since their property did not abut upon the railway right of way or the crossing,

being separated therefrom at all points by the 75-foot width of Hickory street; in other words, they merely showed that they, in company with all the rest of the public, had only enjoyed a right of travel over the crossing as a public way during the time it had been open and maintained by the county as such, and that they had acquired their several properties so adjacent to but not abutting on it while it was being thus used, but they did not establish that a private easement therein had ever inured to themselves by contract, or otherwise, as running with their lands as abutting upon it; wherefore, whatever damage, inconvenience, or impediment they suffered from its closing was different in degree only—simply resulting from being nearer to it—and not in kind from that cast upon the balance of the community in general.

■ They grounded their pleading for the drastic remedy invoked on the averment that there had been an irrevocable dedication of this strip to the public as a crossing, but the most they proved was a permissive use of and maintenance of it by the county as such for perhaps long enough—from 18 to 40 years —to have matured a prescriptive right to it as such in the general public at the time of this abandonment, which right they did not declare upon; but, even so, that merely gave them such rights in it as inhered in the public generally, and did not vest in them individual and private easements or privileges not subject to deprivation by the public authorities.

The undisputed evidence shows that no such dedication to the public had ever been made; on the contrary, that, in the transaction between Mrs. Flourney, the original owner of all the land involved, and one of the railway companies by which she conveyed to it the 800-acre tract of land upon which a part of the town of Edna was established, as well as the 100-foot wide right of way for its railroad through the town, the fee-simple title to this entire right of way, inclusive of the strip across it here involved, also of the additional strips for sidetracks, switches, and depot grounds, was expressly reserved in the railway company, and ever thereafter so remained.

■ The appended sketch, with the notations thereon, constructed from the maps in evidence, none of which ever delineated any crossing over the railroad right of way at Lavaca street, or elsewhere throughout its 100-foot width across the entire 800-acre town-site tract—on the contrary indicating that there were no crossings anywhere— gives an approximate idea of the relative locations of the appellants' different tracts of land with reference to this crossing, Lavaca street, the railroad right of way, the depot grounds, and the town of Edna proper:

Matilda, or cattle-guard 68
A+B Crossing

Rose+Sample
50 Acres

Rose+Sample
60 Acres

Hickory Street

RR

RR R.o.W.

CROSSING

Low Water Bridge

Lavaca Street

Lavaca Street    67 A+B (closed)    La vaca    Street

G.F. Simons
J.F. Simons    J.F. Simons

State

Colorado Street    Colorado    Street

Road

Town
of
Edna
(Lots, blocks
and
Streets)

Hickory Street

Houston Street

RR Track

R.R. Depot

Town
of
Edna
(Lots, blocks
and
Streets)

Highway No 12

Paved

W
S —— N
E

202

It tends to confirm, too, the correctness of the above-made statements as to the physical facts surrounding those lands, the most material of which is that they merely abutted —directly opposite each other—that part of Lavaca street that lay south of Hickory street, which itself was 75 feet distant from the railroad right of way and this crossing over it, hence they nowhere touched either; indeed, only the appellant Simons' tract was located within the original 800-acre town-site tract; the 66 acres of the appellants Rose and Sample lying outside of it on the west.

Mere averment and proof, therefore, that they had bought their lands before this abandonment of the 67A and B crossing, under descriptions that referred to these maps, got them nowhere toward showing that they had thereby acquired such a private easement, or property right, over this crossing they neither abutted on nor had contracted with anybody to keep open, that the governing body of the county lacked the power to vacate in the public interest.

The undisputed facts thus outlined differentiate the case here made from those relied on by appellants, of which the two leading ones are Meyer v. Railway Company (Tex. Com. App.) 50 S.W.(2d) 268, and Commissioners' Court of Harris County v. Kaiser (Tex. Civ. App.) 23 S.W.(2d) 840, in both of which injunctive relief was allowed upon the theory and finding that those lands were not only directly abutting upon the streets or roads involved, but that the owners had acquired private easements therein through contract or purchase; in consequence, they clearly rest upon a different principle of law from that which must control here upon the situation obtaining in this instance; that is, that these litigants were not abutters, nor had they acquired any such private easements necessarily incident to and inseparably connected with their lands as a part thereof at the time they purchased, but, on the contrary, merely became merged with the rest of the public in the right to use this crossing as a public way so long as the county in the interest of all its citizens saw fit and was in position to keep it open as such.

The prescriptive use shown of this crossing would at best only create a public easement or right to maintain it as a public way, which would at all times remain under the control of the commissioners of Jackson county while acting in good faith and presumably at least for the best interests of its citizens, and would not in such circumstances create any private rights in individuals owning land not abutting upon it.

The use and maintenance of such crossing by the county even for the long time shown, acquiesced in by the railway companies, in no way deprived them of their ownership of the land in fee, and, on the abandonment of the crossing as a public way by the county, the land itself reverted to the railway companies, and left them in position to accordingly do with it as they chose; 37 Cyc. page 202, and cited authorities; Mitchell v. Bass, 26 Tex. bottom page 380, as to reversion of the land to the railway company upon discontinuance of the public crossing.

It follows that the sole question here is that of the power of the commissioners' court over a public crossing as such and over the public easement therein owned and controlled by the county, and under the dominion of that court as its governing body; there being, under the undisputed facts of this case, nothing else involved, it follows under a long line of well-settled authorities that that court, presumably acting in good faith and in the public interest, there being no suggestion in this record impugning either, had the power to so release its only interest in this crossing, and that in so doing it prejudiced no existing rights of appellants. 13 R. C. L. pp. 70 and 75; Dallas Cotton Mills v. Industrial Co. (Tex. Com. App.) 296 S. W. 503, at page 504, bottom column 2; Johnson v. Lancaster (Tex. Civ. App.) 266 S. W. 565; Fort Worth & D. S. P. Railway Co. v. Judd (Tex. Civ. App.) 4 S.W.(2d) 1032, at page 1037(21); Kingshighway Supply Co. v. Banner Iron Works, 266 Mo. 138, 181 S. W. 30; Kemp v. City of Seattle, 149 Wash. 197, 270 P. 431.

Appellants Rose and Sample had another 50-acre tract of land involved in the application, which lay a considerable distance further to the west, as also appears on the above sketch, but, as the considerations already stated apply with even greater force to it also, it has been deemed unnecessary to do other than refer to it.

None of appellants' properties were physically appropriated or invaded, nor were they deprived of ready means of ingress and egress in relation thereto, since there were left open and untouched the existing streets of Lavaca and Hickory, which, respectively, lay between them and formed their common northern boundaries; Hickory, on the east, led to a present crossing over the railroad at Colorado street only a few blocks away, which itself, at about the same distance to the north, connected with paved state highway No. 12 that appellants alleged they were inconvenienced in reaching by the abandonment of the closer crossing at Lavaca, hence were in a way peculiar to themselves—and irreparably—damaged; on the west, Hickory street led on to the new substituted crossing at Matilda, 1¾ miles distant in that direction, while Lavaca to the south still connected with what was known as the "Low Water Bridge Road," which afforded outlets from that junction in both directions.

■ As regards the invoking of the Fifth Amendment to the Constitution of the United States, in view of the fact that it is a limitation upon the powers of the general federal government only, and has nothing to do with state agencies, it is not thought to have any application here. Corrigan v. Buckley, 271 U. S. 323, 46 S. Ct. 521, 70 L. Ed. 969; Talton v. Mayes, 163 U. S. 376, 16 S. Ct. 986, 41 L. Ed. 196.

■ Neither, in our opinion, was it necessary for the procedure outlined in R. S. 1925, arts. 6703 and 6705, to have been followed in this instance, since it seems to have been held that they have no application to a public road or crossing that has not been originally laid out and located by a jury of view, as the undisputed facts recited show was not the case here. Morriss v. Cassady, 78 Tex. 518, 15 S. W. 102, 104; Uvalde County v. Oppenheimer, 53 Tex. Civ. App. 137, 115 S. W. 904, 907; Fort Worth, etc., v. Judd (Tex. Civ. App.) 4 S.W.(2d) 1032, 1038.

The effect of the county's action in this instance was nothing more than to release and abandon its so-acquired public easement in this crossing, notwithstanding the provision that it was done "to the effect that all public travel may be excluded therefrom," because it had no other interest, and, since the absolute title to the land itself was at all times in the railway companies subject only to that easement while effective, the rights of full ownership to it in other respects reverted to the railway companies on the releasing of that interest.

Further discussion becomes unnecessary, since these conclusions determine the merits of the appeal; the judgment of the trial court will therefore be affirmed.

Affirmed.

### On Motion for Rehearing.

After careful reconsideration of the cause on appellants' motion for rehearing, it is thought the original disposition of it should be adhered to; it seems to this court that the arguments and authorities adduced on the motion disclose that appellants fail to differentiate between an action for damages in such a case and one for mandatory injunction alone, as was their suit in this instance; in other words, while they offered proof tending to show that the closing of this crossing had resulted in a depreciation in the value of their nearby lands, they wholly failed to declare upon that as a ground of recovery sought, but limited their prayer to a reopening and subsequent maintenance by the county of the closing as a public way, so that a right of travel over it was alone involved.

■ It is now well settled in Texas that easements over such ways may be either of a public or a private character, and that these two separate and distinct rights may coexist in contemporaneous and harmonious operation, or the one may be destroyed without necessary impairment of the other—that is, that the public authority may vacate and close, or relinquish, a public easement therein, without impairing the private rights, if any such exist. Dallas Cotton Mills v. Industrial Co. (Tex. Com. App.) 296 S. W. 503, Kahn v. City of Houston (Tex. Com. App.) 48 S.W.(2d) 595, 596, Bowers v. City of Taylor (Tex. Com. App.) 16 S.W.(2d) 520, and Id. (Com. App.) 24 S.W.(2d) 816.

■ But in this instance, as originally brought out, there had never been any dedication—irrevocable or otherwise—to the public of this crossing as such, nor did the parties to this cause claim under a common source proprietor who had platted and dedicated the same as a public way, with direct reference to which they had purchased; to put it differently, the appellants, in effect, admitted that their sole claim rested upon a prescriptive right to a continued use of it as a public highway that they had acquired in common with all the rest of the public; when, at the time they purchased, their property was adjacent to but not abutting on it, and they were at least charged with knowledge of the undisputed fact shown upon the records reflecting the title to the railroad right of way, including the maps and plats thereof, that there had never been any dedication or conveyance of this strip across it to the public for any purpose; since, therefore, there had never—through dedication to the public nor by contract with others that the public authority was bound to respect—passed into the appellants any individual or private right to keep this passageway forever open as a privilege that ran with their property, there was nothing prohibiting the county commissioners, while acting in good faith and presumptively at least for the public good, from releasing the merely public easement that alone existed in it.

The motion will therefore be overruled.

Overruled.