

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

August 6, 1968.

Hon. Alfred Fitzpatrick
County Attorney
Dimmit County
Carrizo Springs, Texas    78834

Opinion No. M-265

Re: Fence cutting, road
blocking and related
questions-applicability
of Articles 784 and
1353, Vernon's Penal
Code.

Dear Mr. Fitzpatrick:

This office is in receipt of your recent request for
an opinion wherein you state as follows:

"I am requesting your opinion in regard to three
matters, closely related, dealing in essence with
the right of a landowner to have access to his
land.  These questions involve a determination
of the applicability of Article 784 and 1353,
Texas Penal Code, the factual situations being
as follows:

"Situation 1:  A owns 40 acres of land designated
'A' on the attached drawing marked Exhibit 1.  B
owns surrounding land designated 'B', the remaining
land being owned by parties not material to the
situation.  A does not reside on land 'A', but
has fenced the same and made certain improvements
on it.  A seeks access on an alleged County Road
laid out by the Commissioners Court in the late
1800's, but not used as a road for a period in
excess of twenty years.  The alleged County Road
is marked in red and B's fences in blue.  If the
boundaries of the County Road can be established
as marked, the fences of B would obstruct the
County Road.

"Situation 2:  This situation involves a ten
acre tract of land owned by A in a subdivision
established in the early 1900's, the subdivision

- 1283 -

being partially shown by Exhibit 2.  The plat of
such subdivision shows a 40-foot road as indicated
on the Exhibit, by which owners of each tract
would have access to an established County Road.
However, no development of the subdivision was
ever made, the roads themselves not laid out on
the ground, and the ten acre tract is inclosed
by the fence of B who owns the majority, but
not all, of the surrounding land.  A does not
reside on the land, it is not separately fenced,
and no improvements are on it.

"Situation 3:  A owns the property marked 'A'
on Exhibit 3, the only access to this land from
the County Road being through the land of B on
the road marked in red.  This latter road has
never been declared a public road by the Com-
missioners Court, but it has been used by A
and his predecessors in title in excess of a
twenty-year period.  The road is also maintained
by the County.  A does not reside on the land
except during part of the hunting season, but
there are improvements on the same and the land
is fenced.  B has given notice that he intends
to construct a fence across the road used by
A in reaching his land.

"In each of the three situations it is necessary
to know if A would violate Article 1353 by in-
juring the fence of B, as well as if B violated
or would violate Article 784 by obstructing the
road with a fence.  If there is a violation on
B's part, then the fence would have to be re-
moved and A would thereby have access to his
tract of land."

Inasmuch as the provisions of Article 4399, Vernon's
Civil Statutes, limit the authority of this office to ad-
vising your office in regard to the prosecution and defense
of actions wherein the state is interested, this opinion
shall be restricted to a discussion of the applicability
of Articles 784 and 1353, Vernon's Penal Code, to the stated
fact situations.  No attempt will be made to set out, itemize,
define or otherwise discuss the "right of a landowner to
have access to his land" or to his civil remedies incident

thereto.

Article 784 provides as follows:

"Whoever shall wilfully obstruct or injure or
cause to be obstructed or injured in any manner
whatsoever any public road or highway or any
street or alley in any town or city, or any
public bridge or causeway, within this State,
shall be fined not exceeding two hundred dollars."

That the road be a "public road" and that the obstruc-
tion was "wilfully" placed are both necessary elements of the
offense which must be found upon sufficient evidence by the
trier of fact, and in the case of a jury, upon proper in-
struction of the Court.

As to "public road," such element in each case must be
found from evidence showing that the road was in fact open
to, or was in fact being used by the public as such, regard-
less of the condition of title or the private rights of any
party in the land or roadway in question.

Article 784 does not define "public road" but its meaning
may otherwise be established, as shown by the holding in
O'Sullivan v. Brown, 171 F.2d 199, 201 (1948):

"The Texas legislature did not define a public road
or public street in the nonresident motorist sta-
tute, but it did define them in other acts having
to do with motor fuel taxes and with the regulation
of vehicles and of traffic. [Art. 7965b-1; Art.
6701c, §1(g); Art. 6675a-1(m); Art. 6101d, Subd.
III, §13(a) and (b)]. Under these definitions,
to constitute a public highway or street, the way
must be (1) open to public use as a matter of
right, (2) subject to State legislative juris-
diction under its police power and not privately
owned or controlled, or (3) publicly maintained
when any part of it is open to use; while a
private road or driveway is a way or place pri-
vately owned and used by the owners and those
having express or implied permission from the
owners, but not by others.

"The distinguishing characteristics relative to

the nature and use of highways is that they be
open generally to the public, as a matter of
right, regardless of their ownership.   (39 C.J.S.,
Highways, §1, pages 915, 919 )"

In Nichols v. State, 120 Tex.Crim 219, 49 S.W.2d 783,
784 (1932), the court said:

"The question thus arises as to what is a public
highway or road in the sense that term is used
in Article 802, P.C.  The object of said sta-
tute is to protect the general public, while
using ways which are open to the public from
dangers incident to the operation thereon of
automobiles.

". . .We further believe that the allegations
in the second count were sufficient.  Also, that
by oral testimony of persons reasonably familiar
with such use, it may be shown that such street,
road, or highway is public, that is, one used
or open for use and traffic by the public. Questions
as to the time or manner of dedication, title to the
soil, place of location, as within a city, town, or
in the county, or questions of private rights and
privileges, become ordinarily immaterial upon a
trial when the indictment charges that the place
of such violation, in a case like this is upon
a public road or highway, and when the testi-
mony of witnesses be without contradiction that
such road is open or used for traffic by the
public generally."

As to the remaining element of "wilfully," it should
be pointed out that the cases hold, and any instruction
should import, that intent is a constituent element of this
offense, and it must appear that the obstruction was willful
on the part of the accused.  Such intent is not to be pre-
sumed from the act of obstruction; but it must be proved
as a fact as such fact is proved in other offenses where
it is an element of the offense.  Brinkoeter v. State, 16
Tex.Crim. 72 (1884); Shubert v. State, 16 Tex.Crim. 645
(1884); Jenkins v. State, 124 Tex.Crim. 92, 60 S.W.2d
1040 (1933).

The three fact situations presented require separate

consideration as to the element of "public road," to-wit:

Situation 1.   The road was laid out by the Commissioners Court in the late 1800's, presumably was opened, used and maintained as such for some time, but has not been used as a road for a period of time in excess of twenty years.

Under certain circumstances the public nature of such a road may be terminated by discontinuance on the part of the Commissioners Court, adverse possession on the part of the property owner, or by common law abandonment.  These will be discussed separately.

### a.   Discontinuance by Commissioners Court.

If this road was laid out in accordance with the provisions of Article 6703, Vernon's Civil Statutes, et seq., the right of the public in such road may be discontinued only by the Commissioners Court following the procedure for such discontinuance as set out in Article 6703, et seq., Porter v. Johnson, 140 S.W. 469 (Tex.Civ.App. 1911, no writ).

Provided, however, that Article 5526a, Vernon's Civil Statutes, provides that if the Commissioners Court, though not strictly following such procedures, had passed an order closing and abandoning, or attempting to close and abandon such public road, the right of the public therein would be cut off after two years inasmuch as such statute purports to vest limitation title in the landowner in possession.

If, however, the road had not been laid out in accordance with the provisions of Article 6703, its discontinuance might be effected by means other than those prescribed in Articles 6703, et seq.  Simons v. Galveston H. & S.A. Ry. Co., 57 S.W.2d 199 (Tex.Civ.App. 1933, err. dismd.).  It would therefore, appear that in cases where the road had not been laid out in accordance with Article 6703, et seq., a discontinuance might be shown by acts short of Commissioners Court compliance with Article 6703, et seq., or without such an order as is described in Article 5526a.

The facts stated in Situation 1 do not appear to indicate that a discontinuance was effected in any of the above described ways and it is doubtful that the public nature of the road could be found to have been terminated by discon-

tinuance on the part of the Commissioners Court.

b.   Adverse possession by land owner.

As a general rule public easements are not subject to the bar of the statute of limitations. Eidelbach v. Davis, 99 S.W.2d 1067, 1073 (Tex.Civ.App. 1936, error dismd.). In fact, Article 5517, Vernon's Civil Statutes, in excluding county roads from the applicability of the limitation statutes provides as follows:

> "The right of the State, all counties, incorporated cities and all school districts shall not be barred by any of the provisions of this Title, nor shall any person ever acquire, by occupancy or adverse possession, any right or title to any portion of any road, street, alley, sidewalk, or grounds which belong to any town, city, or county, or which have been donated or dedicated for public use to any such town, city, or county by the owner thereof, or which have been laid out or dedicated in any manner to public use in any town, city or county in this State."

The provisions of Article 5517, supra, prohibit the taking of title to old roads by adverse possession. Maples v. Henderson County, 259 S.W.2d 264, 268 (Tex.Civ.App. 1953, error ref., n.r.e.). However, in 1955, Article 6703a, Vernon's Civil Statutes, was enacted which provides:

> "Whenever the use of a county road has become so infrequent that the adjoining land owner or owners have enclosed said road with a fence and said road has been continuously under fence for a period of twenty (20) years or more, the public shall have no further easement or right to use said road unless and until said road is re-established in the same manner as required for the establishment of a new road; this Act shall not apply to roads to a Cemetary or Cemetaries; provided, however, that this Act shall not apply to access roads reasonably necessary to reach adjoining land."

It is a fact question as to whether this road is an "access road reasonably necessary to reach adjoining land," and if so, Article 6703a not only would be ineffective in

cutting off the private right of an adjoining land owner but by its own provisions it would not cut off the public rights in such road in that its provisions simply do not apply in such situation.

Further problem is presented by the question of whether Article 6703a is prospective or retrospective in nature. If determined to be prospective, the twenty year limitation period would not begin to run before its enactment in 1955 and in no case would any rights have yet ripened thereunder. Thus, if the road had been properly laid out in accordance with Article 6707 et seq., as a matter of law, the public nature of such road has not been lost by adverse possession under this statute. If the statute were determined to be retrospective in nature it would be a question for the trier of fact whether the use had become so infrequent that the adjoining land owner or owners had enclosed said road with a fence and said road had been continuously under fence for a period of twenty years or more.

c.   Common law abandonment.

It is recognized that in limited situations the public nature of a road may be lost by common law abandonment, and it is believed that 39 C.J.S., Highways, Section 130, pages 1065, 1066 contain as concise a statement as can be found on the point, to-wit:

> "While 'once a highway always a highway' is an ancient maxim of the common law, nevertheless as far as the public is concerned, the right to a public highway may be lost by abandonment, subject only to the limitation that the abandonment shall not injure vested rights. To effect an abandonment there must be an intention to abandon.
>
> "It is presumed that a highway, once shown to exist, continues to exist. Abandonment is a fact which must be proved and the burden is on the one who asserts abandonment to prove it by clear and satisfactory evidence."

Texas recognizes such doctrine, as is shown by the following excerpt from the case of Maples v. Henderson Co., supra, to-wit:

". . .We agree with appellants that a common-law
abandonment is made up of two elements: (1) Acts
of relinquishment, and (2) the intention to abandon.
Both elements must be shown by the parties asserting
the abandonment, though intention may be inferred
from the conduct of the parties. . . .Neither do
we believe that the failure of the County to grade
the road in recent years or otherwise maintain it,
establishes an abandonment as a matter of law."

It would, therefore, appear that even though the road
had been laid out in accordance with Article 6703 et seq.,
and had not been discontinued by action of the Commissioners
Court, the defendant might show facts upon which could be
found a common law abandonment and therefore defeat a
finding of the existence of a public road.

Situation 2. This involves a forty foot roadway dedi-
cated to public use by plat, but no development has been
made of the subdivision and the roads were never "laid
out" on the ground.

"It is well settled that, though a particular plat
undertakes to dedicate streets and roads, such
does not make them public roads, with consequent
obligation on the Commissioners Court, as the dedi-
cation is a mere offer; McQuillin on Municipal
Corporations, Second Edition, Vol. 4, sec. 1700;
16 Am.Jur. p. 374; 66 A.L.R. 332; McLennan County
v. Taylor, Tex.Civ.App., 96 S.W.2d 997." Com-
missioners Court v. Frank Jester Development
Company, 199 S.W. 2d 1004, 1007 (Tex.Civ.App.
1947, error ref., n.r.e.).

Although the above case dealt primarily with the obli-
gation of the county in regard to the maintenance of the
road, in Rankin v. State, 8 S.W. 932 (1888), the Texas Court
of Appeals, in a criminal prosecution under the forerunner
of Article 784, Texas Penal Code, spoke directly on this
point by holding as follows:

"By the first count in the information the de-
fendant is charged with unlawfully and willfully
obstructing and injuring, and causing to be ob-
structed and injured, a public road. This count
is not sustained by the evidence; the fact being

that the obstruction complained of, a fence, was
on defendant's land at the time said road was es-
tablished.  The said road was never opened after
it was established.  It could not be obstructed,
within the meaning of Article 405 of the Penal
Code, until it had been opened."

Rankin, supra, involved a road laid out apparently by
the Commissioners Court in accordance with the provisions
of 6703 et seq., and involved a pre-existing fence, yet
it is important to note that the Court directly held that
a road could not be obstructed until it had been opened.
Although the road in Situation 2 is one that was laid out
by "dedication" of the property owner, the facts would not
appear to support a finding that it had ever been opened
to the public; and until this was done, the evidence could
not support a finding that it was a "public road."

Situation 3.  This involves a road that has never been
declared to be a public road by the Commissioners Court,
but the road is maintained by the county.  According to
the plat you submitted the road crosses the land of "B"
and dead-ends at the property of "A".  The test of whether
a road is in fact public was discussed in Bradford v. Moseley,
223 S.W. 171, 173 (1920), by the Texas Commission of Appeals
as follows:

"Whether a road is public depends in a measure
on the particular facts, but it does not depend
on its length, its terminus, nor the number of
people who use it; it is a public road if there
is a general right to use it for travel even if
it ends in a cul-de-sac."

Proof may be adduced of the fact that the road is public
in a number of ways, as shown in the holding of the courts in
Wood v. State, 45 S.W.2d 599, 600 (Tex.Crim. 1931):

"It is well settled under the decisions of this court
that a road may be shown to be a public road by other
evidence than the production of the order of the
commissioners' court establishing it as such. The
undisputed evidence offered by the state showed that
between 3 or 4 years prior to the 4th day of July,
1929, Richards Park was donated as a fair ground,
and that this road was opened up through the park,

and that since that time it had been open to and
used by the general public as a public road, and
that for the same length of time the county com-
missioners' court, acting through the commissioner
in whose precinct the road lay, had recognized it
as one of the public roads of the county, and had
regularly worked the same as a public road for the
county with county employees, teams, and machinery,
and had been so doing for more than 3 years.  This
was sufficient evidence to establish it as a public
road prima facie under the decisions of this court.
See Michel v. State, 17 Tex.App. 108; Berry v.
State, 12 Tex.App. 249; Race v. State, 43 Tex.Cr.R.
438, 66 SW 560; Jolly v. State, 19 Tex.App. 76;
Dyerle v. State (Tex.Cr.App.) 68 S.W. 174; Ward
v. State, 42 Tex.Cr.R. 435, 60 S.W. 757; Johnson
v. State (Tex.Cr.App.) 31 S.W. 2d 1084."

In Johnson v. State, 31 S.W. 2d 1084, 1086 (1930), a
Commission of Appeals case with opinion approved by the
Court of Criminal Appeals, the court held:

"The state was unable to show from the records
that the road upon which appellant was alleged to
have driven the automobile had ever been established
as a public road by order of the commissioners'
court, in compliance with the statutory require-
ments, and the state then resorted to proof of
long usage of said road by the public, and recog-
nition of it as a public road by the commissioners'
court in working it in order to establish the public
character of the road.  All of such testimony was
objected to by appellant on the ground that no 'proper
predicate had been laid.'  We are unable to perceive
what further predicate was necessary than to show
an absence of court orders establishing the road in
compliance with the statute to render admissible
the evidence objected to.  The evidence shows con-
clusively that the road in question had been used
by the general public as a public road for more
than thirty years.  Road hands under the old road
laws had worked it under the supervision of road
overseers; and in recent years the commissioners'
court, through the county commissioners or road
supervisors, had graded and worked the road.  We
do not undertake to set out the evidence in detail,

but it is ample to establish that the road in
question was a public road under many author-
ities . . ."

It is thus apparent that a road as that above described,
if open to, used, and recognized by the public as such, may
be shown to be a public road within the meaning of Article
784, and if so found by the trier of facts upon sufficient
evidence of such use, maintenance, acceptance and freedom
of passage, should sustain a conviction.

Article 1353, Vernon's Penal Code, provides as follows:

"Any person who shall wilfully and wantonly or
with intent to injure the owner cut, injure or
destroy any fence or part of a fence (unless such
fence is the property of the person so cutting or
destroying the same) shall be confined in the
penitentiary not less than one or more than five
years.  A fence within the meaning hereof is any
structure of wood, wire, or of both, or of any
other material intended to prevent the passage
of cattle, horses, mules, asses, sheep, goats
or hogs, provided however, that it shall con-
stitute no offense for any person owning or
residing upon land inclosed by the land[1] of
another who refuses permission to such person
residing within such inclosure free egress or
ingress to their said land for said person to
open a passage way through said inclosure."

Here, again, "wilfully" and "wantonly or with intent
to injure the owner" are both requisite elements of the
offense and must be found to exist by the trier of facts.
However, your inquiry is directed more to the applicability
of the exclusion from coverage of "any person owning or re-
siding upon land inclosed by the land (fence) of another who
refuses permission of such person residing within such in-
closure free egress or ingress to their said land for said
person to open a passage through said inclosure."

---

[1] So in enrolled bill.  Probably should read "fence."

It is the opinion of this office that it would be a violation of Article 1353 for anyone to cut such fences if they were not the owner of such fences, except in situations where free egress and ingress have been denied to a person residing within such enclosure and the fence is cut by the owner of the property enclosed or by such resident thereon.

Where there is no resident involved, the owner of such enclosed land does not have the need of immediate ingress and egress and must avail himself of remedies other than that of self-help of opening a way.  In none of the three fact situations do you show anyone to be residing upon such premises; therefore, the cutting of such fence would subject the offender to prosecution under such Article, all other elements of the offense being present.

## S U M M A R Y

(1)  A road laid out by the Commissioners Court in the late 1800's, but not used as a public road for more than 20 years, remains a "public road" as that term is used in Article 784, Vernon's Penal Code, unless rights of public were cut off by (a) discontinuance by Commissioners Court, (b) adverse possession by land owner, or (c) by common law abandonment, each of which are fact questions to be determined by the trier of facts.

(2)  The mere fact that an area is shown on a recorded plat as a road dedicated to public use, but which has never been opened to the public, would not support a finding that such area was a "public road," as such term is used in Article 784.

(3)  Road maintained by county as a public road but which has never been laid out or dedicated to public use by official action of the Commissioners  Court may none-the-less be found by the trier of facts to be a "public road," as that term is used in Article 784.

(4)  In each of the three fact situations referred to above, it would be a violation of Article 1353, Vernon's Penal Code, for anyone

to cut such fences if they were not the owner of such fences, except in situations where free egress and ingress has been denied to a person residing within an enclosure and the fence is cut by the owner of the property enclosed or by the resident thereon.

(5) For there to be a violation of either Article 784 or 1353, the acts of the offending party must be found by the trier of facts to have been done wilfully; and such intent is not to be presumed from the act done, but it must be proved as a fact.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Howard M. Fender
and Harold Kennedy
Assistant Attorneys General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
Ronald Luna
Fisher Tyler
Brandon B. Bickett
Arthur Sandlin

A. J. Carubbi, Jr.
Executive Assistant Attorney General